In re RSB MANUFACTURING
CORPORATION, Debtor.

RSB MANUFACTURING
CORPORATION,
Plaintiff,

v.

BANK OF BARODA, Elegant Industries
Pvt. Ltd., and Chemical Bank,
Defendants.

Bankruptcy No. 80 B 10679.
Adv. No. 80–5188–A.

United States Bankruptcy Court,
S. D. New York.

March 6, 1981.

Michael Berman, New York City, for debtor.

Mudge, Rose, Guthrie & Alexander, New York City, for Bank of Baroda.

JOHN J. GALGAY, Bankruptcy Judge.

Although letters of credit have become a staple in international trade, their widespread use has not carried with it a corresponding widespread understanding of the possible ramifications of their use. The present controversy between RSB Manufacturing Corporation (RSB), the debtor in these proceedings, and the Bank of Baroda (Baroda) and Chemical Bank (Chemical) arises out of a misconception by the debtor of the extent of the liability which an advising and paying bank assumes under an irrevocable letter of credit when there has been no confirmation of the credit by the bank.

RSB, a supplier of machinery to jewelry manufacturing companies, entered into a contract with Elegant Industries Pvt Ltd. of Bombay, India (Elegant) for the sale of $54,900 worth of machinery. In an effort to assure prompt payment for the merchandise, RSB required Elegant to open a letter of credit for the full contract price.

On September 21, 1979 the Bombay, India branch of Baroda issued an irrevocable letter of credit in favor of RSB for the account of Elegant for the aforementioned amount. On October 11, 1979 Chemical, through its International Operations division in New York City, notified the debtor that said letter of credit has been established. The advice, Exhibit A to the Amended Complaint, specifically stated that Chemical was authorized to negotiate and pay at sight drafts drawn under the credit, but that the communication to RSB was "solely in advice of our Correspondent's credit and conveys no engagement by us." By an amendment dated February 22, 1980, the amount of this letter of credit was increased to $63,500 and the expiration date extended. (Exhibit D).

On February 22, 1980 the Bombay branch of Baroda issued an irrevocable letter of credit in favor of P. Romanoff International Ltd. (Romanoff) for the account of Elegant for $8,853.50 in connection with the sale of raw materials. On March 12, 1980 the New York branch of Baroda (Baroda, N.Y.) notified Romanoff that this second letter of credit had been opened. This advice, Exhibit G, stated that the communication was "solely an advice of a Letter of Credit issued by the below mentioned correspondent and conveys no engagement by us." The correspondent bank is Baroda of Bombay. The claim of Romanoff has been assigned to RSB.

On April 10, 1980, Elegant obtained a temporary injunction in the High Court of Judicature at Bombay in a suit against Baroda, RSB and Romanoff. This injunction restrains Baroda from "encashing and/or paying the two letter[s] of credit of US $63,500 dated September 21, 1979 and US $8,853.50 dated 2/22/80 in any manner whatsoever."

On Saturday, April 12, 1980 Chemical bank received a telegram from Baroda advising Chemical that the injunction had issued in the Indian Court. Chemical was closed for business until April 14. On April 13, 1980 RSB shipped the merchandise ordered by Elegant by way of the Export Patriot, and on April 25, 1980 Romanoff shipped the raw materials by way of American President Lines. By letter dated April 25, 1980 Baroda NY informed Romanoff that no payment under the letter of credit could be made because of the restraining order. (Exhibit I).

On April 17 RSB submitted a sight draft for $63,500 and the required invoices and bills of lading to Chemical. Based on the restraining order issued by the Indian Court, Chemical refused to negotiate the draft. Similarly, on May 5, 1980 Romanoff submitted sight drafts and bills of lading to Baroda, N.Y., and the bank returned those documents advising Romanoff to proceed against Elegant (Letter of May 13, 1980).

On May 12, 1980 RSB filed a petition under Chapter 11 of the Bankruptcy Code (Code) and on that same date Judge Ryan signed an order pursuant to section 362 of the Code, 11 U.S.C. § 362, restraining Elegant from pursuing its suit against RSB in the High Court of Judicature at Bombay.

By a complaint dated June 26, 1980 and amended on July 30, 1980, RSB began the instant adversary proceeding against Baroda, Chemical and Elegant. RSB seeks to collect the full amount of the letters of credit from Baroda N.Y. and Elegant, and damages from Chemical based on Chemical's failure to notify RSB promptly of the restraining order. On August 15, 1980 Baroda N.Y. moved under Rule 712(b) for dismissal of the amended complaint for failure to state a claim upon which relief can be granted on the grounds that Baroda N.Y. has no liability to RSB under Section 204–a(3)(a) of the New York Banking Law, and under the act of state doctrine. Chemical, in its answer, also alleges that the complaint fails to state a claim as to Chemical under the provisions of the Uniform Cus-

toms and Practice for Documentary Credits (1974 Revision) (UCP).

After hearing before this Court on October 12, 1980 at which RSB and Baroda N.Y. were represented, and review of the documents submitted and the relevant law, this Court grants the motion of Baroda N.Y. to dismiss the amended complaint as against it. In Court RSB stated that it would pursue a claim against Chemical only as an alternative relief. (Tr. at 22).

The controversy in this proceeding turns on the question of where an irrevocable letter of credit, governed by the UCP, established in a foreign bank and advised by New York banks is actually "performed." To make that determination requires an understanding of the attributes of a letter of credit as outlined in the UCP. As defined in Section b. a credit is

> "any arrangement ... whereby a bank (the issuing bank), acting at the request and in accordance with the instructions of a customer (the applicant for the credit), ... authorizes such payments [to the order of a third party—the beneficiary] to be made or such drafts to be paid, accepted or negotiated by another bank, against stipulated documents, provided that the terms and conditions of the credit are complied with."

In the present scenario, Elegant is the customer and Baroda is the issuing bank. RSB is the beneficiary of one letter of credit and assignee of the beneficiary, Romanoff, under the second letter of credit. Chemical and Baroda N.Y. are banks authorized by Baroda to negotiate drafts. The letter of credit is a separate transaction from any contract which may exist between the customer and the beneficiary, and the banks are unconcerned with any provisions of the underlying contracts. UCP section (c). See also *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 464 (2d Cir. 1970). Additionally, the beneficiary has no interest in the contractual relationships which exist between the customer and the issuing bank, or between the banks. UCP section (f).

In the present case, at the request of RSB, Elegant made arrangements with its bank in India, Baroda, to provide funds required under the sales contract between RSB and Elegant. Baroda, as a correspondent bank, made arrangements with two banks in New York, Chemical and Baroda N.Y. as advising banks to accept the documents required under the terms of the letters of credit, and to negotiate drafts. Article 3 of the UCP governs irrevocable credits and expressly provides that the credit may be advised to a beneficiary through an advising bank without engagement, meaning that only the issuing bank has assumed a definite undertaking. Exhibits A and G to RSB's amended complaint are the communications from Baroda N.Y. and Chemical to Romanoff and RSB giving notice of the opening of the letters of credit by Baroda. As previously noted, each states that the advice is without engagement and represents solely the credit of the issuing bank.

The fact that both Chemical and Baroda N.Y. could honor drafts, does not alter the fact that neither bank assumed any independent liability to RSB. Henry Harfield in his work, Letters of Credit (ALI, 1979) describes advising and paying banks as "neutral" parties in the letter of credit transaction. The advising bank transmits information and authenticates information. The paying bank is authorized to effect the payment but "takes its instructions from the issuer and undertakes no liability to beneficiary or his successors in interest." *Id.* at 11. In an effort to determine whether the presence in New York of an advising and paying bank under an irrevocable letter of credit was sufficient "presence" in New York to give the District Court long arm jurisdiction over the foreign issuing bank, that court concluded,

> The nature of the relationship between Morgan Guaranty (the paying bank) and Central Bank of Nigeria (the issuing bank) appears to be, therefore, that of an advising rather than a confirming bank. In light of the *limited nature of its participation,* i. e. advising the beneficiary of the issuance of the credit and its authorization to pay upon the presentation of

appropriate documents, its transactions in this state on behalf of the issuing bank cannot form a basis for long arm jurisdiction.

*National American Corp. v. Federal Republic of Nigeria*, 425 F.Supp. 1365, 1371 (S.D. N.Y.1977). (Emphasis added).

Baroda N.Y. has appeared in these proceedings because it does business in New York, not as an agent of Baroda in India. Baroda N.Y. can be held liable to RSB under the letters of credit only in its roles as advising and paying bank. Baroda N.Y. has conceded that absent the injunction issued by the Indian court, if the documents are proper, the bank would pay (Tr. at 4). The question is whether that injunction absolves Baroda N.Y. of its liability.

Section 204–a3(a) of the New York Banking Law reads as follows:

> Notwithstanding section 1–105 of the uniform commercial code, any foreign banking corporation doing business in this state under a license issued by the superintendent in accordance with the provisions of this chapter shall be liable in this state for contracts to be performed at its office or offices in any foreign country, and for deposits to be repaid at such office or offices to no greater extent than a bank, banking corporation or other organization or association for banking purposes organized and existing under the laws of such foreign country would be liable under its laws. The laws of such foreign country for the purpose of this subdivision shall be deemed to include all acts, decrees, regulations and orders promulgated or enforced by a dominant authority asserting governmental, military or police power of any kind at the place where any such office is located, whether or not such dominant authority be recognized as a de facto or de jure government.

Baroda N.Y. is a foreign banking corporation licensed to do business in New York. It can have no greater liability in this country than it would have under the laws of India, where Baroda is incorporated, for contracts to be performed in India. From the previous discussion of the role of advising and paying banks, it is clear that only the issuing bank, Baroda in India, actually assumes any commitment to pay the beneficiary, RSB and that, therefore, performance of the contract, the letter of credit, takes place at the Bombay branch and not in New York.

Elegant commenced a suit against Baroda, RSB and Romanoff in India claiming that some fraud had been committed in connection with the underlying sales contract and, based on those allegations, the High Court of Judicature at Bombay issued its order restraining Baroda from paying the two letters of credit. Although it may have been unfair for Elegant to proceed without due notice to RSB, Elegant was pursuing the only remedy which courts had recognized as an effective means for stopping payment on just this kind of letter of credit, an irrevocable one. See *KMW International v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 16 (2d Cir. 1979); *Dynamics Corp. of America v. Citizens & Southern National Bank*, 356 F.Supp. 991 (N.D.Ga.1973); *United Bank Limited v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976). As Baroda cannot pay the letters of credit while the injunction remains in effect without violating a court order, it informed its advising banks not to negotiate any drafts or accept any documents tendered by RSB or Romanoff. It is not within this Court's power to determine that the injunction was improperly issued nor has RSB articulated any interest of this state which would cause this Court to find that comity should not be observed. As under the laws of India neither Baroda nor Baroda N.Y. can honor the letters of credit issued for the benefit of RSB, without violating the injunction. Section 204–a(3)(a) of the New York Banking Law applies and suspends any liability which Baroda N.Y. would otherwise have under New York law. The situation would have been otherwise had RSB insisted that a New York bank "confirm" the letters of credit and thereby assume an independent liability to the beneficiary so that performance would occur within this state. See UCP Article 3(b).

Since this Court has concluded that the New York Banking Law applies and limits Baroda N.Y.'s liability, we need not determine whether the act of state doctrine applies to court orders as well as to foreign laws or regulatory decrees. See *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Dominicus Americana Bohio v. Gulf & Western*, 473 F.Supp. 680 (S.D.N.Y.1979).

As Baroda N.Y. has acted in conformity with its duties under the UCP and has not wrongfully dishonored RSB's letters of credit, the motion to dismiss the amended complaint as to Baroda N.Y. is hereby granted.

It is so ordered.