**RSB MANUFACTURING CORPORATION,**
**Plaintiff-Appellant,**

v.

**BANK OF BARODA,**
**Defendant-Appellee.**

**81 Civ. 2086 (LBS).**

United States District Court,
S. D. New York.

Oct. 29, 1981.

Michael Berman, New York City, for plaintiff-appellant.

Mudge, Rose, Guthrie & Alexander, Thomas W. Evans, Robert A. Jaffe, Marguerite R. Kahn, New York City, for defendant-appellee.

## OPINION

SAND, District Judge.

This case comes before this Court on appeal from a decision in Bankruptcy Court, 9 B.R. 414 (Bkrtcy.1981) [hereinafter "Opinion"], granting the motion of the defendant-appellee, Bank of Baroda, to dismiss the complaint of the plaintiff-appellant, RSB Manufacturing Corporation ("RSB"). The appellant, beneficiary of two letters of credit, issued by the Bombay branch of the Bank of Baroda and advised by Chemical Bank in New York and the New York branch of Baroda, seeks to collect the full amount of the credits.

Judge John J. Galgay determined that Baroda was not liable. The appellant contends that the court only considered the liability of the New York branch of Baroda as advising bank, failing to reach the question of Baroda's liability as issuer, a question properly before the court because Baroda is subject to jurisdiction in New York for all purposes. This Court finds the appeal without merit for reasons discussed herein and affirms the decision of the Bankruptcy Court.

## BACKGROUND

■ Judge Galgay's decision did not involve any finding of facts.[1] The facts are not disputed by the parties on this motion to dismiss and thus a short summary of the facts stated by the Bankruptcy Court suffices for purposes of this appeal.

### Facts

RSB is a supplier of machinery to jewelry manufacturing companies. It entered into

1. The appellant contends that the court necessarily determined that the New York branch of Baroda was a separate corporate entity. Appellant's Brief at 3–4. Such a finding would have been inappropriate on a motion to dismiss, and, in fact, was not made. *See,* pp. 653–654, *infra.*

a contract for the sale of goods with Elegant Industries Pvt. Ltd. of Bombay ("Elegant"). In order to assure the payment of the contract price of $54,900, RSB required Elegant to apply for an irrevocable letter of credit. The Bombay branch of the Bank of Baroda issued a letter of credit on September 21, 1979 to cover the contract price. This letter of credit was amended on February 22, 1980 to increase the amount of credit to $63,500 and to extend the expiration date. To facilitate payment in New York, Baroda authorized Chemical Bank to serve as the advising and paying bank. Chemical Bank, through its International Operations Division in New York, notified RSB on October 11, 1979 that the credit had been established for the benefit of RSB, specifying that its communication was "solely in advice of our correspondent's credit and conveys no engagement by us." Opinion at 415.

On February 22, 1980, Elegant obtained a second letter of credit, in the amount of $8,853.50, from the Bombay branch of the Bank of Baroda for the benefit of P. Romanoff International Ltd. ("Romanoff"). For this letter of credit Baroda authorized its own New York branch to serve as the advising and paying bank. The New York branch notified Romanoff of the letter of credit on March 12, 1980, stating "that the communication is 'solely an advice of a Letter of Credit issued by the below mentioned correspondent and conveys no engagement by us.'" Opinion at 415. This letter of credit is also a subject of this litigation since Romanoff has assigned its claim to RSB.

Subsequently, Elegant, alleging fraud in the underlying sales contracts, sued RSB, Romanoff, and Baroda in the High Court of Judicature in Bombay, and obtained a temporary injunction on April 10, 1980, restraining Baroda from "encashing and/or paying the two letter[s] of credit of U.S. $63,500 dated 21–9–79 and U.S. $8,853.50 dated 22.2.80 in any manner whatsoever. . . ." Exhibit A, Brief for the Appellee. Informed of the injunction, the two New

York advising and paying banks dishonored drafts submitted by the beneficiaries of the letters of credit. Chemical dishonored RSB's draft for $63,500 on April 17, 1980 and Baroda dishonored Romanoff's draft on May 5, 1980. Opinion at 415.

In the interim between the issuance of the injunction and the dishonoring of the drafts, both RSB and Romanoff shipped goods to Elegant; RSB on April 13 and Romanoff on April 25.[2] Opinion at 415.

RSB filed a petition under Chapter 11 of the Bankruptcy Code, on May 12, 1980, at which time Bankruptcy Judge Edward J. Ryan ordered Elegant to refrain from prosecuting its suit in India. Opinion at 415.

In the related case which led to this appeal, RSB sought payment on letters of credit from Baroda and Elegant and damages arising from Chemical's delay in notifying RSB of the Indian Court's injunction from Chemical. Baroda presently appeals from Judge Galgay's decision dismissing RSB's claim against Baroda.

*The Opinion*

Judge Galgay characterized the question of the place of performance of the letters of credit as determinative. Opinion at 416. Under New York Banking Law, Sec. 204–a (3)(a) (McKinney), a foreign banking corporation, such as Baroda, can be liable "for contracts to be performed at its office or offices in any foreign country . . . to no greater extent than a bank . . . organized and existing under the laws of such foreign country would be liable under its laws." *Quoted in* Opinion at 416–417. Thus, if the letters of credit were only to be performed in India, rather than in New York, Judge Galgay reasoned, the existence of the Indian Court's injunction, extinguishing the present obligation of Baroda, would preclude Baroda's liability in New York as well. Opinion at 416–417.

Judge Galgay found that the letters of credit were to be performed only in India, because the New York branch of Baroda

---

**2.** It should be noted that RSB does not at this time pursue its assigned claim against Chemical. Opinion at 416. Relevant to that claim is the fact that the New York branch of Baroda received notice of the injunction on April 12, 1980 but failed to notify Romanoff until April 25, 1981. Opinion at 415.

and Chemical had expressly limited their roles to that of advising and paying banks. Opinion at 416–417. Judge Galgay discussed the obligations of the several parties to the letters under the provisions of the Uniform Customs and Practice for Documentary Credits (1974 Revision) (UCP), applicable in this case. The two New York branches, here, effectively limited their roles, as UCP Article 3(b) permits, and thus remained neutral parties in the arrangement, authorized to advise the beneficiaries of the issuance of the credit and to accept documents and negotiate drafts on behalf of the issuing bank. Opinion at 416. Had these banks "confirmed" the letters of credit, they would have assumed liability to pay. Opinion at 417, *citing* UCP Art. 3(b). Only the Bombay branch of Baroda, the issuing bank, extended its credit to Elegant and assumed a commitment to pay the beneficiary. Opinion at 416. The advising and paying banks incurred no obligation to pay. Since only the Bombay branch of Baroda was obligated to pay, the Judge concluded, the performance of this obligation must take place in Bombay. Opinion at 417.

Applying N.Y. Banking Law Sec. 204–a(3)(a) (McKinney), the Judge found any liability the New York branch might otherwise have had extinguished by the Indian injunction. Opinion at 417.

*The Appeal*

In its appeal, RSB concedes at the outset the correctness of the Bankruptcy Court's finding that the New York branches were merely advising and paying banks, undertaking no obligation of their own. Appellant's Brief at 4. Instead it argues that the court raised the issue of jurisdiction "sua sponte," without the benefit of a record, found that the two branches of Baroda were separate corporate entities, and went on to discuss only the liability of the New York branch as advising bank. Appellant's Brief at 3. It argues that Baroda is subject to personal jurisdiction in New York and thus the court should have reached the question of Baroda's liability as issuing bank. Appellant's Brief at 3. RSB further contends that the letters of credit were to

be performed in New York, because the New York branches were authorized to make payments in New York. Appellant's Brief at 2.

Baroda concedes that it was subject to the Bankruptcy Court's jurisdiction for causes of action arising anywhere because it does business in New York. Appellee's Brief at 4. It contends that the court's decision did not depend on a finding of corporate separateness and that it is not liable as issuing bank. Baroda argues that the efficacy of the injunction depends on the place of performance of the obligation and that since the New York branch was only the advising and paying branch without an independent obligation, the performance was to have taken place in India and the Indian court's injunction barred that performance. Baroda bolsters its argument with invocations of the sovereign compulsion and act of state doctrines. Appellee's Brief at 5–9.

## DISCUSSION

On a motion to dismiss, it would indeed have been inappropriate to determine the factual question of whether Baroda's New York branch was a separate entity. The Bankruptcy Court did not, however, make such a finding. It is true the court repeatedly referred to the New York branch as "Baroda N.Y." but this term was merely shorthand that the court designated for "the New York branch of Baroda." *See* Opinion at 415. The discussion of the place of performance of the obligation and the different roles of the branches made such a designation convenient. The court addressed the question of where, if the transaction were carried out as planned, the payment would have taken place, not the question of where the Bank of Baroda could be sued for breach of that obligation. It is undisputed that Baroda does business in New York, and thus is subject to jurisdiction in New York for actions arising anywhere. *See* N.Y.Civ.Prac.Law and Rules Sec. 301 (McKinney); Appellee's Brief at 4. But the fact that Baroda can be sued in New York for breach of contract does not

change the parties' substantive agreement regarding the place of performance. While it would be necessary to find the New York branch a separate corporate entity in order to shield it from lawsuits to enforce obligations performable at other branches, such a finding is not necessary to limit the place of performance to a single branch. The designation of a place of performance is a substantive matter within the control of the parties. Here, the Bombay branch of Baroda entered into a contractual obligation to pay when it assumed the role of issuing bank. *See* H. Harfield, Letters of Credit, at 27 (1979). Baroda's use of its own New York branch did not extend its undertaking, because that branch was only to serve the limited, neutral role of advising and paying bank. Without question, the advising and paying bank does not assume any liability to the beneficiary (other than liability for the accuracy of the advising communication). *See id.* at 10–11; UCP Art. 3. Since the New York branch did not confirm the credit, the original contractual obligation was not enlarged, and the situs of the obligation remained Bombay. Thus, the decision of the Bankruptcy Court that the New York branch did not incur liability as advising and paying bank did not depend on a finding of corporate separateness.

Because Baroda was before the court for all purposes, the Bankruptcy Court should also have reached the question of the liability of the Bombay branch as issuer, as the appellant correctly urges and the appellee concedes. The court's opinion does appear to deal exclusively with the New York branch's liability as advising and paying bank, however some of the court's language indicates that it assumed Baroda could not be liable as issuer. Indeed, that conclusion is so clear, the court may have assumed the appellant did not even contend otherwise. The court states, "As under the laws of India neither Baroda nor Baroda N.Y. can honor the letters of credit issued for the benefit of RSB, without violating the injunction, Section 204–a(3)(a) of the New York Banking Law applies and suspends any liability Baroda N.Y. would otherwise have under New York law." Opinion at 417.

It appears from this statement that the court considered the Indian court's injunction a bar to Baroda's performance of its obligation in India.

■■■■ This Court agrees that the injunction precludes Baroda's liability. As the Bankruptcy Court pointed out, RSB does not "raise any interest of this state which would cause this Court to find that comity should not be observed." Opinion at 417. RSB, in fact, does not in any way challenge the efficacy of this injunction. It does not, for example, argue that the Indian Court's decree somehow violates the principles of international law. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). For this reason, the appellant's invocation of the act of state doctrine is superfluous. RSB's claim against Baroda is essentially for breach of contract. The letter of credit, once communicated to the beneficiary, becomes an irrevocable offer which the beneficiary accepts by presenting the paying bank with the required documents. *See* H. Harfield, Letters of Credit at 27–28 (1979). At the point when RSB (or Romanoff, on the second letter of credit) presented the documents, Baroda as issuing bank would be obligated to pay as it had promised, unless its performance had been excused. Here, as the appellee properly argues, the Indian court's injunction excuses Baroda's performance. This excuse is best analyzed as impossibility by legal prohibition. *See* 6 A. Corbin, Corbin on Contracts Sec. 1343 (2d ed. 1962). The defense of impossibility extends to prohibition by judicial action as long as the party seeking to be excused has not caused or failed to prevent the judicial action. *Id.* at Sec. 1346; *see Kama Rippa Music, Inc. v. Schekeryk,* 510 F.2d 837, 842 (2d Cir. 1975). Here, Elegant, not Baroda, procured the injunction, and the appellant does not allege that Baroda could have prevented the court's action. That the injunction issued from a foreign court does not render the excuse unavailable. While it is true that a foreign court's decree restraining a party to a contract cannot excuse a performance to take place in the United

States, it will excuse a performance to take place within that court's jurisdiction. 6 A. Corbin, Corbin on Contracts at Sec. 1351. In this case, as discussed above, p. 654, *supra*, India was the place of performance. Clearly, then, Baroda cannot be held liable for its failure to perform.

Finally, any argument attempting to show that the extinguishment of Baroda's duty to perform in India creates an obligation to pay in the New York branch must fail according to New York Banking Law Sec. 204–a(3)(a). As the Bankruptcy Court correctly stated, Sec. 204–a(3)(a) absolves the New York branch of any contractual liability beyond that imposed in the foreign country where the contract was to be performed.

This Court therefore affirms the decision of the Bankruptcy Court dismissing RSB's amended complaint against the Bank of Baroda.

SO ORDERED.