**BANCO NACIONAL DE DESARROLLA, Plaintiff,**

v.

**MELLON BANK, N.A., Defendant.**

Civ. A. No. 82–0938.

United States District Court,
W.D. Pennsylvania.

March 11, 1983.

---

Richard B. Tucker, III, Tucker, Arensberg, Very & Ferguson, Pittsburgh, Pa., for plaintiff.

Eric A. Schaffer and James H. McConomy, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

Plaintiff, Banco Nacional De Desarrolla (hereinafter Banco), is a Nicaraguan bank with its principal office in Managua, Nicaragua. Defendant, Mellon Bank, N.A. (hereinafter Mellon), is an American bank with its principal office in Pittsburgh, Pennsylvania.

Banco seeks to recover from Mellon the sum of $43,387.50, which represents the face

amount of a draft that Mellon refuses to honor.[1] Mellon contends that it does not owe any money to Banco. This case is ripe for decision as a result of cross-motions for summary judgment. Upon these motions the Court must decide the effect, if any, of a provision in an amended letter of credit requiring the issuer to receive written notice that certain goods had arrived in the United States prior to issuing payment.

The background to this dispute is as follows: On August 6, 1980, I.B.P. Corporation (hereinafter I.B.P.), applied to Mellon for a letter of credit in favor of Empressa Nicaraguensa de la Carne, Encar (hereinafter Encar).[2] Mellon agreed and on August 7, 1980 issued an irrevocable letter of credit Number 47728 for the amount of about $98,000. Banco was named as the advising bank and Encar was named as the beneficiary.

The letter of credit purported to cover "[f]resh frozen boneless beef packed in polylined fiber carton solid packed in even weight 60 # cartons. Approx 1200 carton min 90% C.L. chucks at 1.18 FOB and approx. 124 ctns. 100% lean product at 1.75 FOB Nicaragua."

Evidently the parties to the underlying transaction, Encar and I.B.P., continued to do business regarding Nicaraguan meat between August 1980 and January of 1981. Throughout this time frame, Mellon issued 14 Amendments to the Letter of Credit 47728.[3] These amendments generally extended the date of credit, increased the amount of credit available, covered other beef shipments and made other changes. There is no dispute regarding any of these amendments.

Letter of Amendment number 15 was issued on February 17, 1981. In addition to including several terms concerning amount available, etc., this amendment ended with the following condition: "For product covered by this amendment only payment will only be effected upon Mellon Bank's receipt from IBP Corporation of written notice that product has arrived in the United States."

The product covered in Amendment number 15 corresponded to invoice drafts 0146–IG and 0148–IG. It is alleged that on February 16, 1981, Encar sent both invoices to Banco for payment. (See para. 11 of Banco's complaint.) The product was actually sent to I.B.P. on or about February 10, 1981. On February 18, 1981, Banco paid Encar for 10 drafts, including 0148–IG. Banco, in turn, remitted those drafts to Mellon with the supporting documents. Mellon reimbursed Banco for all of the invoices with the exception of 0148–IG.

Mellon claims that it never received written notice from I.B.P. that the goods covered under that invoice arrived in the United States. Therefore, its refusal to honor that draft was fully within its rights.

Banco, on the other hand, urges that the notice provision of Amendment number 15 is ineffective since it was not consented to by the beneficiary, Encar. Therefore, Ban-

---

**1.** The entire relief sought by Banco is $43,-387.50 plus interest and costs, including reasonable attorneys' fees.

**2.** I.B.P. is an American importer of meat from Central America. Encar sells and exports beef from Nicaragua. Mr. Joel Berg, an agent employed by I.B.P. for all relevant times herein, testified at a deposition that I.B.P. had been "doing business down in Central America for twenty odd years." He also stated that Encar became the representative of the Nicaraguan government concerning meat sales in 1979. (See Deposition Transcript of Mr. Joel Berg, pages 4–9.)

**3.** Letter of Amendment (hereinafter Amendment) number 1 was issued August 11, 1980, Amendment number 2 was issued August 27, 1980, Amendment number 3 was issued October 8, 1980, Amendment number 4 was issued October 16, 1980, Amendment number 5 was issued October 21, 1980, Amendment number 6 was issued October 28, 1980, Amendment number 7 was issued November 3, 1980, Amendment number 8 was issued November 26, 1980, Amendment number 9 was issued December 5, 1980, Amendment number 10 was issued December 17, 1980, Amendment number 11 was issued December 23, 1980, Amendment number 12 was issued December 31, 1980, Amendment number 13 was issued January 15, 1981, and Amendment number 14 was issued January 26, 1981.

co asserts its right to reimbursement of the face amount of 0148–IG which is $43,387.50.

Banco filed a complaint in this district on May 26, 1982. An appropriate answer was interposed on June 17, 1982. Following the close of discovery, Banco submitted the instant motion for summary judgment and Mellon cross-moved for similar relief. Both sides have submitted briefs.

■ Initially, the Court notes that suits involving letters of credit are readily appropriate for resolution by summary judgment, *Bossier Bank & Trust Co. v. Union Planters National Bank,* 550 F.2d 1077 (6th Cir.1977); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2d Cir.1970) (both cited cases involving cross motions for summary judgment).

■ Nonetheless, pursuant to Federal Rule of Civil Procedure 56(c), a federal court will grant summary judgment only "if the pleadings, depositions, answers to interrogation, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party. *Goclowski v. Penn Central Transportation Company,* 571 F.2d 747 (3d Cir.1977). When cross-motions for summary judgment are submitted, as is the case at hand, the court is not to assume that there are no issues of material fact, but must make an independent determination based on the proof submitted by the parties. 10 Wright and Miller, Federal Practice and Procedure § 2720 (1973). *See also McDougall v. Donovan,* 552 F.Supp. 1206 (N.D.Ill.1982).

With all of the above considerations in mind, and after careful consideration, we hold that there are no genuine issues of material fact, and that summary judgment in favor of the plaintiff, Banco, is warranted.

Generally speaking,

[A] commercial letter of credit is a written instrument, ordinarily issued by a bank, authorizing someone, generally the seller of goods, to draw in accordance with certain terms and stipulating that such bills will be honored. . . . Commercial letters of credit are issued in a great variety of forms and are made available in a great many ways but the essential object in every case is the same: to evidence to a selected correspondent, or to bankers generally, the nature of the credit which the opening bank has committed itself to extend to its customer.

Letter of Credit, 50 Am.Jur.2d § 2.

The Uniform Commercial Code as adopted in Pennsylvania defines a letter of credit as an "engagement by a bank or other person made at the request of a customer and of a kind within the scope of this division (section 5102) that the issue will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." 13 Pa.C.S.A. § 5103(a).

■ A bank's obligation under a letter of credit is independent of the underlying sales contract and if the presented documents comply with the terms of the letter of credit, the bank is obligated to pay regardless of whether the bids themselves conform to contractual terms. *H. Ray Baker, Inc. v. Associated Banking Corp.,* 592 F.2d 550 (9th Cir.1979), *cert. denied,* 444 U.S. 832, 100 S.Ct. 63, 62 L.Ed.2d 42. This allows the seller to substitute the credit of a bank with an established international reputation for that of a foreign buyer whose credit worthiness may not be known in the seller's country. *Id.*

Letters of credit can be either revocable or irrevocable. *See* J. White and R. Sommers, *Uniform Commercial Code,* 2d edition, § 18–4. In the instant case the letter of credit states that it is irrevocable.[4] Nei-

---

4. The letter of credit number 47728 states that it is subject to the Uniform Customs and Practice for Documentary Credits (hereinafter U.C.P.). Article 1 of the U.C.P. states that all credits should "clearly indicate whether they are revocable or irrevocable." Uniform Commercial Code § 5–103(1)(a) states in part that a "credit may be either revocable or irrevocable."

ther it nor any of the first 14 amendments contained a condition requiring written notice of the meat and/or beef products arrival in the United States prior to Mellon releasing payment.

Letter of Amendment number 15 did so require. Thus, there are two traditionally strong concepts of letter of credit law competing here. On the one hand Mellon urges that an issuing bank must honor a draft only where all required documents are submitted in strict accordance with the terms of the letter of credit. *See Courtaulds North America, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4th Cir.1975); *Chase Manhattan Bank v. Equibank,* 550 F.2d 882 (3d Cir.1977). This principle of strict compliance is counter balanced here against the general rule that an irrevocable letter of credit cannot be modified or revoked without the consent of the beneficiary.[5] Banco trumpets this rule and asserts that it precludes Mellon from relying upon the lack of written notice provision as a justifiable reason for dishonoring the draft involved 0148–IG.

Neither bank disputes the existence of the two principles involved. It is the differing interpretations that give rise to the instant controversy.

█ After considering all of the material submitted and the relevant law, we hold that the notice provision of Amendment number 15 was not consented to by Encar and ineffective. By so holding, we implicitly reject the argument advanced by Mellon that Amendment number 15 was a new offer of credit and not an amendment to the original letter of credit number 47728. All of the prior amendment forms (including Amendment number 15) state, in several places, that they are amendments to the original credit. The parties involved understood that to be the situation and, at this stage, to allow Mellon to claim that Amendment number 15 was, in reality, a new offer of credit is, in our view, contrary to the agreement involved.

While we agree with the basic contention of Mellon that it is entitled to strict compliance with the terms of the letter of credit before issuing payment, that only begs the more fundamental question of what are the terms of the particular letter of credit.

If the notice provision is part of the letter of credit, then Mellon would be entitled to receive such a notice under the strict compliance doctrine. Similarly, if the letter of credit is interpreted, as a matter of law, not to include such provision, then Mellon would be precluded from demanding same prior to issuing payment.

█ Such is the case here. Amendment number 15, while similar to the 14 prior amendments in that it increased the amount of money and pertained to shipments of beef, differed remarkably by requiring written notice of the products arrival in this country before payment was to be made. We do not think that there is anything inherently wrong with this provision, even in an irrevocable letter of credit. But *see* 13 Pa.C.S.A. § 5114(a) wherein it states in part "[t]he issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer . . ."

In other words, we do not think that the notice provision is invalid because it is repugnant to an irrevocable letter of credit. We do hold that the provision is ineffective

---

As adopted in Pennsylvania, 13 Pa.C.S.A. § 5103(a) contains the same language. Therefore, in view of the fact that the letter of credit herein states that it is irrevocable, and that there is no evidence to the contrary, the Court clears the first hurdle.

5. 13 Pa.C.S.A. § 5106(b) reads as follows:
 Modification or revocation of irrevocable credit.—Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.
 There is no dispute but that the credit involved in the present case had been established as to Encar (beneficiary) prior to Letter of Amendment number 15. *See also, Toyota Industrial Trucks U.S.A. v. Citizens National Bank of Evans City,* 611 F.2d 465 (3d Cir.1979).

because it was an attempt to take unilateral action with respect to modification of the terms, of an irrevocable letter of credit, which is impermissible without the consent of the beneficiary. *See* Uniform Commercial Code Comment, 12A P.S. § 5–106.

 Mellon next argues that Encar did, in effect, consent to this provision by not objecting to its inclusion in Amendment number 15. Mellon further notes that subsequent amendments also contained the notice provision and no objection was raised. Therefore, Mellon claims it justifiably relied on this silence to mean that Encar consented to this provision. While this is not totally against all reason, we do not agree. We believe the better view, and one which will facilitate stability and certainty in the commercial world, is that any modification of the underlying agreement between buyer and seller, or any modification of the letter of credit, should not affect the letter of credit unless the beneficiary explicitly consents to the modification of the letter. *See Asociacion de Azucareros de Guatemala v. United States National Bank of Oregon,* 423 F.2d 638 (9th Cir.1970). In order for this provision of Amendment number 15 to be effective, the explicit consent of Encar was necessary. Since there is no evidence that Encar did so consent, the notice provision of Amendment number 15 was ineffective.

We believe this interpretation of the Code's section concerned with modification of letters of credit is consistent with and will help to promote the general stability associated with letters of credit.

 Mellon advances the theory that Banco became a confirming bank within the meaning of U.C.C. § 5–103(1)(a) and, in addition, paid Encar at its peril, thereby forfeiting any right of reimbursement from Mellon. This argument assumes, of course, that the notice provision was required before any bank whether an issuer, or a confirming bank, could release payment against the remaining documents. Since Banco did not wrongfully honor Encar's draft, it is entitled to reimbursement from Mellon. *Cf. Chase Manhattan Bank v. Equibank,* 550 F.2d 882 (3d Cir.1977).

For all of the foregoing reasons, we hold that summary judgment in favor of Banco is appropriate. The amount of recovery is the face amount of the draft 0148–IG, plus interest. We decline to award attorneys' fees to Banco. *See Data General Corp. v. Citizens National Bank,* 502 F.Supp. 776 (D.Conn.1980).

An appropriate order will issue.

### ORDER

AND NOW, this 11th day of March, 1983, IT IS ORDERED that the Motion for Summary Judgment filed by the plaintiff, Banco Nacional de Desarrolla, is GRANTED, the Motion filed by defendant, Mellon Bank, N.A., is DENIED, and that judgment is entered in favor of the plaintiff, Banco Nacional de Desarrolla, and against the defendant, Mellon Bank, N.A., in the amount of $43,387.50 with interest at the rate of .06 per annum from February 19, 1981 to the date of this Order, and said judgment shall be subject to post-judgment interest at the rate of .0899 per annum until the judgment is satisfied. Costs, other than attorney fees, are to be paid by the defendant.