BANCO NACIONAL DE DESARROLLO

v.

MELLON BANK, N.A.,

Appeal of BANCO NACIONAL DE DESARROLLO, in No. 83–5247.

Appeal of MELLON BANK, N.A., in No. 83–5272.

Nos. 83–5247, 83–5272.

United States Court of Appeals, Third Circuit.

Argued Nov. 28, 1983.

Decided Jan. 18, 1984.

Rehearing and Rehearing In Banc Denied Feb. 13, 1984.

James H. McConomy, Eric A. Schaffer (argued), Michael E. Lowenstein, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Mellon Bank, N.A.

Richard B. Tucker, III (argued), Tucker, Arensberg, Very & Ferguson, P.C., Pittsburgh, Pa., for Banco Nacional de Desarrollo.

Before GIBBONS, SLOVITER, Circuit Judges, and CALDWELL, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The question in this appeal is whether Mellon Bank, issuer of a letter of credit, wrongfully dishonored a request for payment from a Nicaraguan bank, Banco Na-

* Hon. William W. Caldwell, United States District Court for the Middle District of Pennsylvania, sitting by designation.

cional de Desarrollo. On cross motions for summary judgment, the district court held that payment was required. We reverse the judgment of the district court.

## I.

The I.B.P. Corporation of Pittsburgh ("IBP"), an importer of meat from Central America, arranged for Mellon Bank to issue an irrevocable letter of credit in favor of Empresa Nicaraguensa de la Carne, Encar of Managua, Nicaragua ("Encar"), an exporter of meat with which IBP had made a purchase agreement.

1. "About" is agreed by the parties to indicate that an additional 10% is available for contingencies such as currency fluctuations.

2. An "advising bank" is a "bank which gives notification of the issuance of a credit by another bank." 13 Pa.Cons.Stat.Ann. § 5103(a) (Purdon Supp.1983). Use of an advising bank is common in international transactions both to notify the beneficiary and to discount and present the draft to the issuer. *See* S. Mentschicoff, *How to Handle Letters of Credit,* 19 Bus.Law. 107, 108, 110 (1963). The advising bank assumes no promissory liability to the beneficiary for payment of drafts under the letter of credit. 13 Pa.Cons.Stat.Ann. § 5107(a) (Purdon Supp.1983). *Compare* §§ 5103(a), 5107(b) ("confirming bank" engages to honor credit issued by another bank as if an issuer).

3. The relevant text of the letter of credit issued on August 7 is as follows:
 "CONFIRMS CABLE OF TODAY"
 Mellon Bank N.A. Documentary Letter of Credit Irrevocable, Place of issue: Pittsburgh, Pennsylvania. Date of issue: August 7, 1980. Letter of Credit Number: of issuing bank 47728. Advising Bank: Banco Nacional de Desarrolla. Applicant: I.B.P. Corporation. Beneficiary: Empresa Nicaraguensa de la Carne, Encar. Amount: U.S. $98,000.00 (ABOUT). Expiry: Date August 31, 1980 in Nicaragua for negotiation.
 We hereby issue this documentary letter of credit which is available against beneficiary's draft at SIGHT FOR 100% INVOICE VALUE drawn on Mellon Bank N.A. bearing the clause: "Drawn on documentary letter of credit No. 47728" accompanied by the following documents:
 Signed Commercial Invoice in quadruplicate including statement that all cartons are marked with U.S.D.A. approved markings and that the product is free of any chemicals, additives, and pesticides, and conforms to all regulations of the USDA and country of ori-

The letter of credit Mellon Bank issued on August 7, 1980 in the amount of about $98,000.00 [1] named Banco Nacional as the advising bank to Encar,[2] and was to expire on August 31, 1980. Mellon Bank was to pay "100% INVOICE VALUE" upon receipt of various documents covering a shipment of "Fresh frozen boneless beef packed in polylined fiber carton solid packed in even weight 60 # cartons. Approx 1200 carton min 90% C.L. chucks at 1.18 FOB and approx. 124 ctns. 100% lean product at 1.75 FOB Nicaragua." [3]

gin and stating that the original Nicaraguan Meat Inspection Certificate has been airmailed to the broker at the port of discharge. Special Customs Invoice 5515 in duplicate, Packing List in duplicate.
One copy Nicaraguan Veterinary [sic] Meat Inspection Certificate,
Copy of your cable addressed to Gurrentz International Corporation dated not later than one week after date of the on board Bill of Lading stating this Letter of Credit Number, quantity, product, name of carrying vessel, and port of discharge.
2/3 set clean on board ocean Bills of Lading plus one non-negotiable copy consigned to order and blank endorsed evidencing refrigerated shipment from Nicaragua to Los Angeles, CA dated not later than August 21, 1980,
Copy of beneficiary's cable addressed to I.B.P. Corporation dated no later than one week after date of the on board Bill of Lading stating Letter of Credit Number 47728, quantity, product, name of carrying vessel and port of discharge,
One copy Ministry of Secursos Naturales Nicaragua Meat Inspection Certificate,
purporting to cover Fresh frozen boneless beef packed in polylined fiber carton solid packed in even weight 60 # cartons. Approx 1200 carton min 90% C.L. chucks at 1.18 FOB and approx. 124 ctns. 100% lean product at 1.75 FOB Nicaragua
Shipment from Nicaragua to Los Angeles, CA. Partial shipments are not permitted. Transshipments are not permitted.

We hereby engage with the bona fide holders of all drafts drawn and/or documents presented under and in compliance with the terms of this letter of credit that such drafts and/or documents will be duly honored upon presentation to us. The amount of each drawing must be endorsed on the reverse side of this letter of credit by the negotiating bank.
Indications of the advising bank: This is an irrevocable letter of credit of the above men-

Shipment and payment proceeded on course. IBP and Encar conducted subsequent dealings via Mellon Bank and Banco Nacional by means of "amendments" to the letter of credit which altered one or more terms covering the amount, expiry, documentation, goods covered, shipment or "special conditions". Mellon did not negotiate the "amendments" with Banco or Encar, but issued them on instructions from IBP and then advised Banco and forwarded copies.

Encar shipped two loads of meat to Miami on February 10, 1981. At that time, no amendment to the letter of credit covered that shipment. On February 16, Encar submitted documents and drafts covering those two loads of meat to Banco for payment. On February 17, upon instruction from IBP, Mellon issued Amendment 15, which stated: "Amount increased by About US $450,-000.00 ... Shipment permitted of 1 load shank at US $1.11 per lb. FOB shipment to Miami and 1 load clods at US $1.1150 per lb. FOB shipment to Miami.... For product covered by this amendment only *payment will only be effected upon Mellon Bank's receipt from IBP Corporation of written notice that product has arrived in the United States.*" (emphasis added). Banco received a telex from Mellon of the gist of Amendment 15 on February 17, and sent a copy to Encar. Banco then paid Encar for the February 10 shipments and for other shipments not in contest here.[4]

By early March, Banco submitted the drafts and documents covering the February 10 shipments to Mellon for re-payment on behalf of Encar. Mellon telexed Banco

that it was awaiting written notice from IBP that the product had arrived. IBP authorized payment for various goods from various shipments, but never notified Mellon of the arrival of one of the shipments of February 10 listed in Amendment 15 and invoiced as 0148–IG (although it appears conceded that the shipment did in fact arrive). Mellon paid Banco for all but that one shipment. On March 31, the letter of credit expired. Banco Nacional sued Mellon for $43,387.50, the invoice value of shipment 0148–IG, alleging wrongful dishonor, and basing federal jurisdiction on diversity of citizenship. The parties, after completion of discovery, submitted cross-motions for summary judgment. The district court held Mellon bound to pay Banco, finding that by requiring written notice from IBP, Mellon had impermissibly amended an irrevocable letter of credit without the beneficiary's approval. *Banco Nacional de Desarrolla v. Mellon Bank, N.A.,* 558 F.Supp. 1265 (W.D.Pa.1983).

## II.

This court is obliged to follow Pennsylvania's choice of law rules in this diversity case. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Those rules require application of Pennsylvania substantive law. *See Toyota Industrial Trucks U.S.A., Inc. v. Citizens National Bank,* 611 F.2d 465 (3d Cir.1979); *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 355–56, 336 A.2d 316, 323 (1975).[5] The governing Pennsylvania law is

---

tioned issuing bank and is transmitted to you without any responsibility or engagement on our part.

4. Mellon issued three more amendments to the letter of credit after Amendment 15. Amendment 16 added shipments and contained a provision that payment would only be made upon notice of arrival from IBP. Amendment 17 extended the shipping and expiry dates to March 31. Amendment 18 added several more shipments and also contained a provision that payment would be made only upon notice of arrival from IBP. The parties have not raised any dispute about these later amendments or shipments.

5. Mellon's letter of credit stated that it was subject to the Uniform Customs and Practice for Documentary Credits (International Chamber of Commerce, 1974 revision) (UCP). Pennsylvania regards the UCP as a recording of common practice, and not the substantive law of a state which contracting parties may choose under the choice of law provision of the Uniform Commercial Code, 13 Pa.Cons.Stat. Ann. § 1105(a) (Purdon Supp.1983). *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 355, 336 A.2d 316, 322 (1975). *Compare KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 15 & n. 3 (2d Cir.1979) (New York U.C.C. provision § 5–102(4) applies

contained in Article 5 of the Uniform Commercial Code, 13 Pa.Cons.Stat.Ann. §§ 5101 *et seq.* (Purdon Supp.1983), and relevant case law. *See generally Intraworld,* 461 Pa. at 355–56, 336 A.2d at 323.

■ A letter of credit is an efficacious arrangement which assures payment for completion of an obligation by placing the duty to pay on an issuer of good financial reputation. In order to assure a contracting party, usually a seller of goods or services, of payment where the debtor's reliability is uncertain, the debtor arranges for the issuer to undertake to pay the agreed upon sum on the obligee's presentation of specified documents, usually evidencing completion of the underlying transaction. A fundamental principle of letter of credit law is that the issuer is a purchaser of documents only, obliged to pay if the specified documents are received without reference to the changing status or desires of the buyer and seller: "The issuing bank deals only in documents and need only determine whether they appear on their face to be in accordance with the terms and conditions of the credit." *Chase Manhattan Bank v. Equibank,* 550 F.2d 882, 885 (3d Cir.1977). The issuer, in keeping with its role as purchaser of documents, need only pay the beneficiary upon strict compliance with the documentary requirements, *id.* at 886, unless the issuer's customer waives compliance.[6]

■ Barring knowledge that the submitted documents are fraudulent, the issuer's obligation must be independent of the conduct of the underlying transaction.

*See Roman Ceramics Corp. v. Peoples National Bank,* 714 F.2d 1207 (3d Cir.1983). This separation of roles gives the letter of credit its versatility and utility.

### III.

As the district court noted, the letter of credit entered into by Mellon on behalf of Encar on August 7, 1980 was irrevocable, since it so stated in several places. The court viewed the notice requirement contained in Amendment 15 as an attempted unilateral modification by Mellon of the documentation requirements of the irrevocable letter of credit. The court then gave judgment for Banco by applying the established rule that no party may modify an irrevocable letter of credit against the wishes of the others. 13 Pa.Cons.Stat.Ann. § 5106(b) (Purdon Supp.1983). *See Toyota Industrial Trucks,* 611 F.2d at 470.

■ The fallacy in the district court's conclusion is that it assumed that before the attempted modification Mellon had promised to pay for documents covering the shipment in question. Review of the letter of credit and of the first 14 amendments reveals no such promise.

The letter of credit, as originally issued, applied on its face to specific cartons of meat, for which specific documentary evidence of shipment was to be supplied Mellon in return for payment. *See supra* note 3. There was no reference to documents covering the February 10 shipments, including invoice 0148–IG. Indeed, the original letter of credit was to expire on August 31, 1980, well before the February 10, 1981

UCP and not U.C.C. to letters of credit subject by their terms to the UCP). In *Intraworld,* the Pennsylvania Supreme Court agreed with the parties that the Pennsylvania U.C.C. controlled a letter of credit issued by a Pennsylvania bank, on behalf of a Pennsylvania customer, in favor of the Swiss-Italian owner of a Swiss hotel, the lease of which was the underlying subject of the transaction. Pennsylvania law applied despite a clause that "[the bank's] obligations to [the beneficiary] are 'subject to' the Uniform Customs and Practice." 461 Pa. at 355, 336 A.2d at 322. The situation here is closely analogous and Pennsylvania substantive law applies. However, even were the UCP

provisions applicable, the result we reach in this case would be the same.

**6.** The Uniform Customs and Practice establishes a similar rule of specificity in documentary requirements and separation of the documentary transaction from the underlying contract for goods and services. *See, e.g.,* General Provisions and Definitions, Paragraph c, "Credits, by their nature, are separate transactions from the sales or other contracts on which they are based and banks are in no way concerned with or bound by such contracts"; Article 8(a), "In documentary credit operations all parties concerned deal in documents and not in goods."

shipment. Therefore, nothing in the original letter of credit obligated Mellon to pay for the shipment. This was not a general letter of credit or a general guaranty of performance, but a specific promise, for a set period, to pay a specific amount for specific documents.

The first 14 "amendments" also contained no promise to pay for documents covering the shipment in question. The 14 "amendments" covered additional shipments of beef of specific cuts and quantities, and contained delivery terms which differed from those in the original letter of credit. The parties chose to incorporate the boiler plate language of the existing letter of credit to accommodate future shipments. The "amendments" represented, in fact, new offers of credit under which Mellon promised to pay the amounts set forth upon presentation of certain documents covering specific shipments from Encar to IBP.

Banco states, "It is ... Banco's position that Amendment 15 was totally ineffective at the time Banco made payments to Encar and transmitted draft 0148–IG to Mellon for reimbursement." Brief for Appellee at 32. However, it can point to no other document in which Mellon undertook to pay for this shipment. Neither the original letter of credit nor any of the 14 "amendments" contained a promise by Mellon to "purchase documents" for the two loads of beef Encar sent to Miami on February 10. That shipment was covered only by Amendment 15 issued on February 17. Therefore, the district court erred in viewing amendment 15 as an attempted modification of a previously issued letter of credit, because in fact no prior letter of credit covered these shipments.

Encar acted at its peril when it shipped beef on February 10, relying on its trust in IBP to procure from Mellon a satisfactory amendment covering the shipment. Similarly, Banco Nacional acted at its peril when it advanced payment to Encar before submitting documents to Mellon. Mellon was under no obligation to Encar to issue the amendment it expected. Mellon could

have refused to issue any amendments, subject to its contractual obligations to IBP.

The amendment that Mellon Bank did issue (Amendment 15) stated that payment for the shipments in question would be made only upon receipt of written notice of arrival from IBP. This is the only promise Mellon made to purchase shipment 0148–IG. Because IBP did not notify Mellon of arrival, Mellon was not obligated to honor Banco's draft absent a waiver of notice from IBP. There was no evidence Mellon received such a waiver.

 Banco makes the disingenuous claim that because Mellon informed Banco that the reason for nonpayment was the absence of written notice from IBP of arrival, Mellon is held to have waived "all other discrepancies" relating to the documents, Brief for Appellee at 33, and cannot now claim that it was not otherwise obligated to pay draft 0148–IG. While it has been held that an issuer waived discrepancies in documentation by informing the negotiating party it would disregard them, *see Chase Manhattan Bank*, 550 F.2d at 887, Banco cites no case for the unlikely proposition that the absence of any applicable letter of credit is a mere "discrepancy in documentation." In *Bank of Taiwan v. Union National Bank*, 1 F.2d 65 (3d Cir.1924), on which Banco relies, we held that at a new trial the issuer could not object to payment on the ground that plaintiff was not a bona fide holder of the draft, having argued in litigation until then only that the bill of lading had discrepant dates. *Id.* at 66. Mellon has not shifted positions in litigation. Mellon has consistently taken the position that Amendment 15 required written notice, a position consistent with and inseparable from Mellon's contention that neither the original letter of credit nor any of Amendments 1 through 14 promised payment for documents covering the shipment in question.

IV.

Banco also argues that, assuming Amendment 15 is effective, the notice provision should not be enforceable because it

destroys the usefulness of the letter of credit. The U.C.C. prohibits the *issuer* of a letter of credit from reserving to itself a general power to determine when payment is due. *See* 13 Pa.Cons.Stat.Ann. § 5114(a) (Purdon Supp.1983). The Code Comment regards such a reservation as "repugnant to an irrevocable letter of credit." U.C.C.Code Comment 1 to § 5114(a). Nor may the issuer dishonor upon the customer's instruction *after* the credit has been issued and received. *Id. See* 13 Pa.Cons.Stat.Ann. § 5106 (Purdon Supp.1983). This is to avoid the issuer's becoming embroiled in an underlying dispute between the parties. In this case, however, there was no general reservation in Mellon, nor had there been any credit established for the shipment in question before it embarked. When Encar shipped goods prior to receipt of amendments it relied on an agreement with IBP, and not on Mellon's letter of credit. Its suit, if any, should lie against IBP.

▪▪▪ There is no legal impediment to a letter of credit which provides that the issuer undertakes to pay the beneficiary only upon receipt of a specified notice or document from its customer, the debtor. *See Corporacion de Mercadeo Agricola v. Mellon Bank International,* 608 F.2d 43, 49–50 (2d Cir.1979). Similarly, we reject Banco's argument that such a notice provision transformed Mellon into a guarantor of IBP's performance. *Cf. Wichita Eagle & Beacon Publishing Co. v. Pacific National Bank,* 493 F.2d 1285 (9th Cir.1974) (bank is really guarantor where promise to pay turns on underlying contract performance). The notice provision was unambiguous and could be implemented without involving Mellon in the underlying IBP-Encar transaction.

### V.

The parties agree that there are no material facts relating to performance which would require a remand and that the disposition of this case is to be based only on interpretation of the documents. We will

---

7. Given our disposition of the case, we need not reach the merits of Banco's cross-appeal

therefore reverse the judgment of the district court and direct that judgment be entered for appellant.[7]

from the district court's denial of attorney's fees.