David E.W. LINES, and Gerry A. Weiss, As Joint Liquidators of the Estate of Cambridge Reinsurance Limited, Plaintiffs,

v.

## BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Defendant.

BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Defendant and Third–Party Plaintiff,

v.

CHEROKEE INSURANCE COMPANY, Central National Insurance Company, New York Marine Managers, Inc., Occidental Fire & Casualty Company of North Carolina, Ohio Reinsurance Corporation, American Centennial Insurance Company, and Surplus Lines Insurance Company, Third–Party Defendants.

No. 88 Civ. 0642 (JES).

United States District Court, S.D. New York.

July 10, 1990.

Chazen & Sheehan, New York City (Gerald D. Roth, of counsel), for plaintiffs David E.W. Lines and Gerry A. Weiss.

LeBoeuf, Lamb, Leiby & MacRae, New York City (Sally A. Morris, Peter M. Foley, Stephanie L. Hutchins, of counsel), for third-party defendant Occidental Fire & Cas. Co. of North Carolina.

Zeichner Ellman & Krause, New York City, for defendant and third-party plaintiff Bank of America Nat. Trust & Sav. Ass'n.

Jack Weiner, New York City, for Bankers Trust Co. of New York.

Butler, Fitzgerald & Potter, New York City, for third-party defendant Surplus Lines Ins. Co.

Mound, Cotton & Wollan, New York City, for third-party defendant Cent. Nat. Ins. Co.

Javits, Robinson, Brog, Leinwad & Reich, P.C., New York City, for third-party defendant American Centennial Ins. Co.

Kroll & Tract, New York City, for third-party defendants New York Marine Managers, Inc. and Ohio Reinsurance Corp.

## OPINION AND ORDER

SPRIZZO, District Judge.

These cross-motions for summary judgment present the question of whether it is a defense to a claim of unjust enrichment that the plaintiff was indebted to the defendant for more than the amount of the enrichment. The Court concludes that in the present case it is not and accordingly, plaintiffs' David E.W. Lines and Gerry A. Weiss, joint liquidators of Cambridge Reinsurance Limited ("Cambridge"), motion for summary judgment is granted and Defendant and Third–Party Defendant Occidental Fire and Casualty Company of North Carolina's ("Occidental") cross-motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed.

Cambridge is a limited company organized under the laws of Bermuda. See Stipulation of Undisputed Facts ("Stip.") at ¶ 1. Prior to April 19, 1985, Cambridge was engaged in the business of entering into contracts of reinsurance with respect to property, casualty and other risks. On April 19, 1985 Cambridge filed a petition in the Supreme Court of Bermuda seeking a winding up of its affairs. See Stip. at ¶ 2 & Ex. A. The Bermuda Court appointed plaintiffs, David E.W. Lines and Gerry A. Weiss as liquidators on April 22, 1985 and, subsequently, on May 17, 1985, granted the company's petition and ordered that Cambridge's affairs be wound up in accordance with Bermuda law. See Stip. at ¶¶ 3, 4 & Exs. B, C.

Occidental is a corporation organized under the laws of the State of North Carolina that does business in the State of New York. See Stip. at ¶ 5. Occidental is in the business of insuring property, casualty and other risks. Id.

Prior to January 1, 1984 Cambridge and Occidental entered into four separate reinsurance agreements. See Stip. at ¶ 6. These agreements provided, inter alia, that Cambridge, as a reinsurer not admitted to do business in the United States, collateralize its obligations to Occidental for its share of outstanding losses, its share of incurred but not reported losses and its share of unearned premiums. See Stip. at ¶ 6; Affidavit of James O. Eason, Jr. ("Eason Aff.") at ¶ 7 (sworn to June 8, 1989). Cambridge elected to comply with its collateral obligations by providing Occidental with unconditional letters of credit in Occidental's favor.

Cambridge caused Bankers Trust Company to issue four unconditional and irrevocable letters of credit in order to collateralize its obligations. These letters of credit were due to expire on December 31, 1984. At the end of 1984, the Bankers Trust letters of credit were in the aggregate amount of $187,825.00. See Stip. at ¶ 7; Eason Aff. at ¶ 11. This amount was far less than Cambridge's actual collateral requirements. In fact, it was less than half of the actual collateral obligations, which by December 24, 1984 amounted to $395,650.00. See Stip. at ¶ 10; Eason Aff. at ¶¶ 11–12. Moreover, there is no dispute that Occidental had demanded that Cambridge issue an additional letter of credit or increase the existing letters of credit to meet its obligations. See Stip. at ¶ 8; Eason Aff. at ¶ 10.

However, instead of increasing the amounts of the letters of credit, Cambridge decided to replace the Bankers Trust letters of credit with new ones issued by the

Bank of America. Accordingly, prior to December 20, 1984, Occidental received notice from Bankers Trust that the four letters of credit would not be extended beyond their current expiration date of December 31, 1984, *see* Stip. at ¶ 9(a), and would be replaced by identical ones from Bank of America. In a letter to all of the insurance companies who were beneficiaries of letters of credit from Bankers Trust, Peter J. Thrower, a Vice President of a company acting as Cambridge's managers, stated "it should be emphasized that this is a change in issuing banks only, and that the terms and conditions and amount(s) of your present letter(s) of credit will not be altered." Stip. at ¶ 9(b) & Ex. I. There is no indication in the record of what response, if any, Occidental made with respect to this communication.

On or about December 21, 1984, Cambridge caused Bank of America to issue and deliver four letters of credit in favor of Occidental, which corresponded to the four prior letters of credit from Bankers Trust. *See* Stip. at ¶ 11. These letters of credit were to become effective on January 1, 1985. *See* Stip. at ¶ 11.

On December 31, 1984, shortly before the Bankers Trust letters were due to expire, Occidental drew down upon and was paid the full amount of those letters of credit. *See* Stip. at ¶ 12. Thereafter, on May 10 and 16, 1985, Occidental drew upon and was paid the full amount of the new letters of credit issued by Bank of America. *See* Stip. at ¶ 13. Both banks credited themselves with the security that Cambridge had posted to secure the letters of credit. Thus, Occidental received the benefit of both sets of letters of credit.

On May 17, 1988, plaintiffs commenced the instant action. They originally sued Bankers Trust and Bank of America alleging that they wrongfully paid out on the letters of credit. Bank of America then brought a third-party complaint against Occidental and other insurance companies that had also drawn down on both sets of letters of credit. Plaintiffs later dropped

Bankers Trust as a defendant when they filed their First Amended Complaint. On May 9, 1989 plaintiffs filed a Second Amended Complaint and asserted a claim for relief directly against Occidental. This claim was based upon equitable theories of restitution, quasi-contract, unjust enrichment and money had and received. Plaintiffs sought damages of $197,825, the proceeds of one set of letters of credit, plus interest. Occidental's answer admitted most of the relevant facts but denied liability.

## DISCUSSION

■ Plaintiff relies upon equitable principals of quasi-contract, money had and received, unjust enrichment and constructive trust, which, under New York law,[1] permit a plaintiff to recover money when it has come into the defendant's hands wrongfully and it is, under the circumstances, "against good conscience for the defendant to keep the money." *Parsa v. State,* 64 N.Y.2d 143, 148, 474 N.E.2d 235, 237, 485 N.Y.S.2d 27, 29 (1984) (discussing action for money had and received) (quotations omitted); *see Republic of Philippines v. Marcos,* 806 F.2d 344, 355 (2d Cir.1986), *cert. dismissed,* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987) (discussing constructive trusts); *Simonds v. Simonds,* 45 N.Y.2d 233, 241–42, 380 N.E.2d 189, 193–94, 408 N.Y.S.2d 359, 363–64 (1978) (discussing constructive trusts); *Bradkin v. Leverton,* 26 N.Y.2d 192, 196–97, 257 N.E.2d 643, 645, 309 N.Y.S.2d 192, 195–96 (1970) (discussing quasi-contract); *Miller v. Schloss,* 218 N.Y. 400, 407–08, 113 N.E. 337, 339 (1916) (discussing quasi-contract). These doctrines are necessarily flexible because equity must apply its remedies to "whatever knavery human ingenuity can invent." *Simonds, supra,* 45 N.Y.2d at 241, 380 N.E.2d at 194, 408 N.Y.S.2d at 363 (quotation omitted).

■ Generally, New York law requires that a party establish four elements in order to be entitled to a constructive trust: (1) a confidential or fiduciary relationship;

---

1. Both parties agree that this Court must apply New York law. *See generally Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

(2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir.1987) (citations omitted); *Bankers Security Life Ins. Soc. v. Shakerdge*, 49 N.Y.2d 939, 940, 406 N.E.2d 440, 440, 428 N.Y.S.2d 623, 624 (1980). However, these elements are not "talismantic," and courts have held that a constructive trust can be imposed in the absence of some of these factors. *United States v. Rivieccio*, 661 F.Supp. 281, 292 (E.D.N.Y.1987); *Simonds, supra,* 45 N.Y.2d at 45, 380 N.E.2d at 194, 408 N.Y. S.2d at 363; *Coco v. Coco,* 107 A.D.2d 21, 24–25, 485 N.Y.S.2d 286, 289 (2d Dept.), *appeal dismissed,* 65 N.Y.2d 637 (1985).

█ This case, despite the absence of a fiduciary relationship or a promise by Occidental not to draw upon both sets of letters of credit, presents unique circumstances sufficient to warrant imposition of a constructive trust, which is "the formula through which equity finds expression," *Republic of the Philippines, supra,* 806 F.2d at 355 (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)), because "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* Moreover, the New York Court of Appeals has said that "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice ... [I]ts applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Simonds, supra,* 45 N.Y.2d at 241, 380

N.E.2d at 194, 408 N.Y.S.2d at 363 (quoting *Latham v. Father Divine,* 299 N.Y. 22, 27, 85 N.E.2d 168, 170 (1949)).

█ Occidental's argument that merely because Cambridge owed it money a constructive trust may not be imposed is not supported by New York law, where it is a well-settled rule that a debtor owing more than one debt to a creditor may prescribe the manner in which a payment is applied. *See, e.g., Bank of California v. Webb,* 94 N.Y. 467, 472 (1884); *Central National Bank of Canajoharie v. Paton,* 109 Misc.2d 42, 43–44, 439 N.Y.S.2d 619, 621 (Sup.Ct. Otsego Co.1981); *Cukierski v. Standard Milling Co.,* 60 Misc.2d 690, 692, 303 N.Y.S.2d 586, 588 (N.Y.City Civ.Ct. 1969). The basis for this rule is the recognition that the funds which are being transmitted to the creditor are the property of the debtor, and he alone has the right to direct its manner or form of disposition.[2] *See Paton, supra,* 109 Misc.2d at 43–44, 439 N.Y.S.2d at 621.

In this case, Cambridge gave clear and unambiguous notice to Occidental, and indeed, all of the insurance companies that were beneficiaries under the Bankers Trust letters of credit, that the Bank of America letters were intended as *replacement* collateral, not additional collateral. In light of that circumstance Occidental's action in drawing down on both sets of letters was wrongful.[3] *See Cukierski, supra,* 60 Misc.2d at 691–92, 303 N.Y.S.2d at 588. Furthermore, given that circumstance, the fact that Cambridge may not have complied with the terms of the reinsurance agreements in that it owed additional collateral

---

**2.** *Ram Co. v. Kobbeman,* 236 Kan. 751, 696 P.2d 936 (1985), relied upon by Occidental, is not to the contrary. There, the Court stated that the general rule that a creditor must apply a debtor's payment of a debt in the manner that the debtor directs does not apply where the payment in question is already in the creditor's possession as security for a debt. *See id.,* 696 P.2d at 940–41. In such a case, the money already belongs to the creditor and he may apply it to the obligation in any manner he sees fit. *See id.* Here, the additional letters of credit were not in Occidental's possession until it received them after being explicitly told that they were a substitute for the original letters of cred-

it, not an addition to the collateral it already possessed.

**3.** Under New York law a constructive trust may be imposed even without proof of wrongful conduct if equity and good conscience require return of the property in the defendants hands. *See Rivieccio, supra,* 661 F.Supp. at 292; *Simonds, supra,* 45 N.Y.2d at 242, 380 N.E.2d at 194, 408 N.Y.S.2d at 364. In this instance, even absent a conclusion that Occidental acted wrongfully, equity and good conscience would require the imposition of a constructive trust.

under those agreements in an amount in excess of both sets of letters of credit is irrelevant.[4]

The Court also rejects Occidental's argument that this case is analogous to the situation where a vendee who unjustifiably defaults on a real estate contract cannot recover the down payment. *See Maxton Builders, Inc. v. Lo Galbo*, 68 N.Y.2d 373, 502 N.E.2d 184, 509 N.Y.S.2d 507 (1986); *Lawrence v. Miller*, 86 N.Y. 131 (1881). In such a case, the vendee's failure to perform prevents the consummation of the contract pursuant to which the down payment was given and the amount of the down payment is viewed as being analogous to liquidated damages for the breach. *See Maxton Builders, supra*, 68 N.Y.2d at 382, 502 N.E.2d at 189, 509 N.Y.S.2d at 512. In this case, the issuance of the substitute letters of credit had nothing to do with Cambridge's performance under the contract and most certainly cannot be regarded as liquidated damages for an alleged breach of that performance obligation. In sum, while Occidental was certainly entitled to receive letters of credit in an adequate amount, it was not entitled to draw down what it knew to be substitute letters of credit and was not free to disregard Cambridge's express instructions as to how that substitute collateral was to be used.

For the same reasons, the Court cannot accept Occidental's contention that Cambridge cannot recover under equitable theories because there are written contracts between the parties. As noted above, Occidental's conduct and the claims arising from it have nothing to do with either party's performance obligations under the written contracts.

It follows that since Occidental was not authorized or entitled to draw upon two sets of letters of credit, when it knew that the second set was a replacement for the first, Occidental's conduct constituted the kind of self-help that New York law does not permit because that concept, if construed too broadly, undermines the state's power to resolve disputes. *See Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 166, 379 N.E.2d 1169, 1171, 408 N.Y. S.2d 39, 48 (1978); *Hilliman v. Cobado*, 131 Misc.2d 206, 210, 499 N.Y.S.2d 610, 614 (Sup.Ct. Cattaraugus Co.1986); N.Y. U.C.C. § 9–503 (McKinney 1964); *cf. People v. Reid*, 69 N.Y.2d 469, 476, 508 N.E.2d 661, 664–65, 515 N.Y.S.2d 750, 753 (1987) (policy consideration against expanding area of permissible self-help mandated that claim of right defense to larceny charge not be extended to robbery cases).

Occidental's reliance upon *Kelly Asphalt Block Co. v. Brooklyn Alcatraz Asphalt Co.*, 190 A.D. 750, 180 N.Y.S. 805 (2d Dept. 1920), *modified*, 232 N.Y. 304, 133 N.E. 899 (1922), and *Porcella v. Kramrisch*, 59 N.Y. S.2d 349 (N.Y.City Ct.1945), is misplaced. In *Kelly*, the Court held that the plaintiff had authorized and remitted funds to the defendant in payment of debts owed, and therefore could not seek to recover those funds merely because an action to recover on the debts would have been foreclosed by the statute of limitations. *Kelly, supra*, 190 A.D. at 756–59, 180 N.Y.S. at 810–12. The *Porcella* court held only that a judgment creditor could recover sums subject to a garnishee execution issued prior to the defendant's bankruptcy for the time period between the debtor's discharge in bankruptcy and the vacatur of the garnishment order, because under New York law at that time a garnishment order remained effective until it was directly modified or vacated. *Porcella, supra*, 59 N.Y.S.2d at 351. Neither of these cases provide guidance in a case where, as here, a creditor, in defiance of explicit instructions from its debtor, misappropriates both a substitute letter of credit and the original letter of credit which it knew was to be superseded by that substitute letter of credit.[5]

---

**4.** In this connection, the Court notes that of the many insurance companies that also held letters of credit from Bankers Trust as collateral on reinsurance agreements which were replaced by the letters issued by Bank of America, *see* Declaration of Peter C.B. Mitchell at ¶¶ 7–8 & Ex. 7 (sworn to June 9, 1989), only Occidental and six other companies drew upon both sets of letters. *See* Additional Declaration of Peter C.B. Mitchell at ¶ 2 (sworn to July 7, 1989).

**5.** Occidental also relies upon *Field v. Nat'l City Bank of St. Louis*, 343 Mo. 419, 121 S.W.2d 769,

Moreover, it is clear that Occidental was in fact unjustly enriched. A conclusion that a party has been unjustly enriched requires a common sense evaluation of the circumstances of the transfer in light of the relationship between the parties, the opportunities for unfairness and overreaching, and equitable principles. *See McGrath v. Hilding,* 41 N.Y.2d 625, 629, 363 N.E.2d 328, 331, 394 N.Y.S.2d 603, 606 (1977); *Sharp v. Kosmalski,* 40 N.Y.2d 119, 123, 351 N.E.2d 721, 724, 386 N.Y.S.2d 72, 76 (1976).

Occidental's argument that it was not unjustly enriched merely because it received what it was lawfully due ignores commercial reality and must be rejected. The fact is that Occidental was not entitled to draw on both sets of letters of credit, and in so doing it gained an unfair advantage over other creditors who saw fit not to engage in similar conduct. The preference that it wrongfully obtained over those creditors clearly constitutes the kind of unjust enactment which equitable principles should foreclose. Indeed, it would be hard to justify, as a matter of commercial policy, rewarding Occidental for its wrongful conduct at the expense not only of Cambridge, but of other creditors who did not seek to unfairly obtain additional collateral by the simple expedient of ignoring the explicit conditions upon which that collateral had been received.

In sum, the windfall Occidental received by its action depleted Cambridge's estate in liquidation and violated the fundamental equitable principal of bankruptcy law [6] that creditors of the same class should share equally in any distribution from the debtor's estate. *See, e.g., Begier*

*v. Internal Revenue Service,* ⸺ U.S. ⸺, ⸺, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46 (1990) ("[e]quality of distribution among creditors is a central policy of the Bankruptcy Code"); *In re Applied Logic Corp.,* 576 F.2d 952, 957 (2d Cir.1978) ("[o]ne of the dominant impulses in bankruptcy is equality among creditors") (quoting Bankruptcy Court's decision); *In re Windsor Communications Group, Inc.,* 79 B.R. 210, 216 (E.D.Pa.1987) (adopting opinion of the Bankruptcy Court); *see also Arkansas Fuel Oil Co. v. Leisk,* 133 F.2d 79, 80 (5th Cir.1943) (creditor "may not secure an advantage over other general creditors of the bankrupt by its own unlawful act"). The Court therefore concludes that Occidental holds the proceeds of one set of letters of credit as constructive trustee for Cambridge's estate.

Occidental also contends that, even if it drew down upon the second set of letters of credit wrongfully and was unjustly enriched, it is entitled to set off the amount it received against Cambridge's debt to it. However, the doctrine of set-off, which allows mutual debts between a creditor and a debtor's estate to be set-off against one another, *see In re Bohack Corp.,* 599 F.2d 1160, 1164–65 (2d Cir.1979); *see generally* Collier on Bankruptcy ¶ 553.04 (15th ed. 1989), is "restricted in its application by both legal and equitable principles." *Windsor Communications, supra,* 79 B.R. at 215; *see Brunswick Corp. v. Clements,* 424 F.2d 673, 675 (6th Cir.1970), *cert. denied,* 400 U.S. 1010, 1013, 91 S.Ct. 569, 564, 27 L.Ed.2d 623, 623 (1971); *see also Federal Deposit Ins. Corp. v. Bank of America,* 701 F.2d 831, 836–37 (9th Cir.) ("set-off will not be permitted when it would be inequitable or contrary to

---

774 (1938), where the court concluded that "'[o]ne suffers no damage where he is fraudulently induced to do something which he is under a legal obligation to do such as payment of a just debt.'" (quotations omitted). Although this statement appears to be consistent with New York law, *see New York State Urban Dev. Corp. v. Marcus Garvey Brownstone Houses, Inc.,* 98 A.D.2d 767, 771, 469 N.Y.S.2d 789, 794 (2d Dep't 1983), it has no application to this case. Cambridge had no duty or contractual obligation to provide Occidental with *substitute* letters of credit.

6. This action is subject to equitable principles of New York law, *see supra* note 1, and Cambridge's reorganization is, of course, subject to Bermuda law. Nevertheless, cases decided under American bankruptcy laws, subject to general equitable principles, *see NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), have a substantial degree of persuasive force.

public policy to do so"), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). Courts therefore have uniformly held that a creditor who obtains a debtor's property wrongfully is not entitled to set off their liability for that wrongful conduct against a claim that the creditor holds against the debtor. *See, e.g., Brunswick Corp., supra,* 424 F.2d at 676; *Fore Improvement Corp. v. Selig,* 278 F.2d 143, 148 (2d Cir.1960) (Friendly, J., concurring); *Morris v. Windsor Trust Co.,* 213 N.Y. 27, 29–31, 106 N.E. 753, 754 (1914); *Windsor Communications, supra,* 79 B.R. at 216; *Ducker v. Lohrey,* 33 B.R. 973, 976 (Bankr. S.D.Ohio 1983).

The reason for this rule is two-fold. First, because set-off is an equitable principle it must be denied in a situation where it would be inequitable to allow it. *See, e.g., Brunswick, supra,* 424 F.2d at 675; *Windsor Communications, supra,* 79 B.R. at 216. Since Occidental's action in this circumstance unjustly allowed it to obtain a preference over other creditors its application here would be both inappropriate and inequitable.

Second, set-off is also subject to the requirement of mutuality, *see Windsor Communications, supra,* 79 B.R. at 216; *In re O.P.M. Leasing Services, Inc.,* 35 B.R. 854, 868 (Bankr.S.D.N.Y.1983), *modified,* 48 B.R. 824 (S.D.N.Y.1985); *Morris, supra,* 213 N.Y. at 30–31, 106 N.E. at 754, which "requires that 'the debts and credits must be in the same right, and between the same parties, standing in the same capacity.'" *Windsor Communications, supra,* 79 B.R. at 217 (quoting *In re Brendern Enterprises, Inc.,* 12 B.R. 458, 459 (Bankr. E.D.Pa.1981) (citations omitted)). Mutuali-

ty is not present when the creditor has no debt to off-set against the debtor except the liability for the wrongful conversion. *See Windsor Communications, supra,* 79 B.R. at 217. Similarly, where the creditor's conduct is so wrongful that it holds the debtor's property as a constructive trustee the mutuality requirement is also lacking. *See Fore Improvement, supra,* 278 F.2d at 145; *Morris, supra,* 213 N.Y. at 30–31, 106 N.E. at 754.

In this case, Occidental's liability to Cambridge is limited to its wrongful draw down of the additional set of letters of credit. It has no other debt which can be set off against Cambridge's debt and the debts are not mutual. Additionally, since the Court has found that Occidental must be deemed to hold the proceeds of one set of letters of credit as a constructive trustee set-off would not be permissible for that reason as well.[7]

Finally, the Court notes that its decision will not, as Occidental predicts, have dire consequences for the use of letters of credit in commercial transactions. "A letter of credit is an efficacious arrangement which assures payment for completion of an obligation by placing the duty to pay on an issuer of good financial reputation." *Banco Nacional De Desarrollo v. Mellon Bank, N.A.,* 726 F.2d 87, 91 (3d Cir.1984); *see Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 682–83 (2d Cir.1983); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 464–65 (2d Cir.1970); *First Commercial Bank v. Gotham Originals, Inc.,* 64 N.Y.2d 287, 294, 475 N.E.2d 1255, 1258, 486 N.Y.S.2d 715, 718 (1985). There are three relationships in a letter of credit transac-

---

7. The Court's conclusion that the debts were not mutual forecloses Occidental's reliance upon N.Y. Ins. Law § 7427 (McKinney 1985), "which allows set-offs for *mutual* debts or *mutual* credits between the insurer and another person...." (emphasis added); *see also In re Consolidated Ind. & Ins. Co.,* 287 N.Y. 34, 38–39, 38 N.E.2d 119, 120–21 (1941); *Midland Ins. Co. v. Corcoran,* N.Y.L.J., March 9, 1990, at 23, col. 2 (Sup.Ct. N.Y.Co. March 8, 1990) (mutuality requires that debts arise out of the same transaction).

Similarly, Occidental's reliance upon the provisions of some of the reinsurance agreements that provide that "any debits or credits" in favor of either party shall be deemed mutual and shall be set off against one another, *see* Supplemental Affidavit of Rodney D. Davis at Ex. A, is misplaced because that language clearly contemplates a running account of debts between the parties incurred in performance of the contract and is not relevant to situation where, as here, one party has misappropriated funds lawfully belonging to the other, and where Cambridge's claims against Occidental are not based upon Occidental's performance or non-performance under the contract.

tion: the relationship between Cambridge and Occidental; the contract between Cambridge and the Banks that issued the letters of credit; and the banks' resulting obligation to pay Occidental, the beneficiary of the letters in accordance with the conditions specified by Cambridge. *See Voest–Alpine, supra,* 707 F.2d at 682; *Venizelos, supra,* 425 F.2d at 464–65; *First Commercial Bank, supra,* 64 N.Y.2d at 294, 475 N.E.2d at 1258, 486 N.Y.S.2d at 715. The bank's obligation to pay the beneficiary is "primary, direct and completely independent of any claims which may arise in the underlying ... transaction." *Voest–Alpine, supra,* 707 F.2d at 682; *see First Commercial Bank, supra,* 64 N.Y.2d at 294, 475 N.E.2d at 1259, 486 N.Y.S.2d at 719.

The relationship between Cambridge and Occidental is therefore independent of any duty owed by the banks to either party. The Court's decision that Occidental acted wrongfully in drawing down on both sets of letters impacts only upon Occidental's relationship with Cambridge. It has no impact upon the obligations of the banks issuing those letters of credit, and consequently no impact upon the efficiency of letters of credit in furthering commercial transactions.

## CONCLUSION

The Court concludes that Occidental acted wrongfully in drawing down on both sets of letters of credit and was unjustly enriched at the expense of Cambridge and its creditors. The Court also concludes that Occidental holds the proceeds of one set of letters of credit in a constructive trust for the benefit of Cambridge and, ultimately, its creditors. Cambridge's motion for summary judgment is granted as to its first claim for relief against Occidental. Occidental's cross-motion for summary judgment is denied. All parties shall appear at a Pre–Trial Conference on July 27, 1990 at 10:30 AM in Courtroom 129.

It is SO ORDERED.