## The MERCHANTS BANK OF NEW YORK, Plaintiff,

v.

## CREDIT SUISSE BANK, Defendant.

### No. 83 Civ. 6277 (RLC).

United States District Court,
S.D. New York.

April 20, 1984.

Simon, Meyrowitz & Meyrowitz, New York City, for plaintiff; Paul Meyrowitz, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant; Andrew J. Connick, Sarah C. Lichtenstein, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Credit Suisse Bank ("Credit Suisse") brings this motion to dismiss the complaint against it pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim on which relief can be granted. Credit Suisse was sued by the Merchants Bank of New York ("Merchants") for damages which Merchants claims it sustained in consequence of Credit Suisse's wrongful dishonor of an irrevocable letter of credit. Merchants, which acted as the advising bank in the letter of credit transaction, also claims that Credit Suisse breached certain duties with respect to it, which exposed Merchants to liability to Continental Time Corp. ("Continental"), the beneficiary of the letter of credit. Continental was never paid under the letter of credit and consequently sued Merchants. The latter paid Continental $150,000 in settlement of that suit.

Merchants has set forth four claims in its complaint against Credit Suisse based upon contract, fraud and bad faith, contribution and indemnification. For the reasons discussed below, Credit Suisse's motion to dismiss is granted with respect to the contract and contribution claims. Merchants has stated a valid cause of action with respect to the remaining two.

### Background

#### 1. The Letter of Credit

At the request of Credit Suisse's customer, George Bloch, Credit Suisse issued an irrevocable letter of credit in the amount of $236,961.90, in favor of Continental, which was a customer of Merchants. The money was payable against the delivery of certain documents enumerated in the letter with respect to a shipment of watches from Continental in the United States to Bloch in Switzerland. Merchants advised Continental of the issuance of the letter of credit and of its terms and conditions.

On January 23, on behalf of Continental, Merchants presented documents to Credit Suisse for the purpose of collecting payment under the letter of credit arrangement. Alleging certain discrepancies in the documents, Credit Suisse refused them. By telex dated January 29, it requested authorization from Merchants to present the documents on a collection basis.[1] By return telex the same day, Merchants advised Credit Suisse that it could present the documents on a collection basis. Credit Suisse accordingly presented the documents to Bloch. Bloch refused to pay, claiming a set-off based upon an alleged debt of Continental to a third party, which had, Bloch maintained, been assigned to him prior to the issuance of the letter of credit. On February 13, two days after the letter of credit expired, Merchants demanded by telex immediate payment from Credit Suisse. Credit Suisse did not honor the demand. The irrevocability of the letter of

---

1. The telex read:
   documents refused because of following discrepancies -awb [airway bill] doesn't mention airport of departure and airport of destination documents at your disposal
   please authorize us to present documents on collection basis.

credit had been destroyed once it became a collection item.

### 2. *Other Litigation*

In January, 1980, Continental assigned 83.3% of the $236,961.90 proceeds of the letter of credit to S. Frederick and Co. ("Frederick"), and in January, 1981, it assigned the remainder (16.6%) of the proceeds to Arlington Distributing Co., Inc. ("Arlington"). In May, 1980, both assignees brought separate actions, which were later consolidated, against Credit Suisse in the Civil Court of the Canton of Vaud, Switzerland to recover proceeds based on Credit Suisse's alleged wrongful dishonor.[2] In November, 1981, Continental sued Credit Suisse in this court to recover under the letter of credit on grounds that Credit Suisse wrongfully refused to pay. (In March, 1982, Frederick had assigned back to Continental 75% of its share (62.5% of the entire proceeds)). Judge Lasker dismissed the action in favor of the action pending in Switzerland on condition that Credit Suisse not oppose the intervention of Continental there. *Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408 (S.D.N.Y.1982). Credit Suisse brought Bloch into that suit.

Although Continental has not yet intervened in the Swiss suit, in August, 1982, it sued Merchants in the New York State Supreme Court for negligence, misfeasance and/or nonfeasance, and for breach of Merchants' contractual duties under the Uniform Commercial Code ("UCC").[3] Continental's motion for summary judgment was granted on February 10, 1983, *Continental Time Corp. v. Merchants Bank of New York*, 117 Misc.2d 907, 459 N.Y.S.2d 396 (Sup.Ct. New York County, 1983). Merchants moved for leave to renew its opposition to Continental's motion for summary judgment upon submission of additional affidavits. The state court granted this motion and upon renewal denied the motion for summary judgment. (Merchants' Exh. M). The material issue raised by Merchants was whether or not it had requested and received instructions from Continental directing Merchants to authorize Credit Suisse to place the letter of credit on a collection basis. Merchants settled the state court action for $150,000, which is the amount it now seeks to recover from Credit Suisse.

### Discussion

#### 1. *The Contract Claim*

Merchants' contract claim rests mainly upon the proposition that its settlement with Continental entitles it to "step into the shoes" of Continental with regard to the latter's right to the proceeds of the letter of credit up to the amount of the settlement payment.[4] Combined with this argument is Merchants' vague assertion of an implied contract, quasi-contract, or unjust enrichment theory that would entitle Merchants to reimbursement of the settlement amount based on the existence of a duty between itself and Credit Suisse under the letter of credit agreement. These claims can be evaluated only by sorting through the parties' obligations to one another in the context of the letter of credit.

---

2. The consolidated action is entitled, *Arlington Distrib. Co. Inc., S. Frederick & Co. v. Credit Suisse, S.H.*

3. Continental claimed that Merchants breached its contractual duties under UCC §§ 4–202; 4–501; 4–503 and 5–111. Continental maintained that Merchants had breached its duty to Continental in its review of the airway bill, one of the documents which had to be presented to Credit Suisse before payment could be made under the letter of credit. It also claimed that Merchants had breached its duty to notify Continental "seasonably" of Credit Suisse's dishonor of the documentary draft. Similarly, Continental charged that Merchants failed to request instructions from it after Credit Suisse dishonored the draft.

4. Merchants also makes a contract argument based on standardized "permanent instructions" in its collection letter to Credit Suisse which authorizes the latter "to take steps which, in your opinion are necessary to protect the interests of our customers and ourselves...." This language, however, imposes no contractual duty upon Credit Suisse. Furthermore, as Credit Suisse points out, the essential elements of a contract—offer, acceptance, and consideration—are not in evidence.

■ A letter of credit transaction[5] involves three separate and independent relationships: 1) an underlying sale of goods contract between buyer (Bloch) and seller (Continental); 2) an agreement between a bank (Credit Suisse) and its customer (the buyer, Bloch) in which the bank assents to issue a letter of credit; and 3) the bank's (Credit Suisse's) resulting engagement to pay the beneficiary (the seller, Continental) on the condition that certain documents presented to the bank conform with the terms of the credit issued on its customer's behalf. *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 682 (2d Cir.1983); *Cf. International Leather Distributors Inc. v. Chase Manhattan Bank, N.A.*, 464 F.Supp. 1197, 1201 n. 9 (S.D.N.Y.) (Werker, J.), *aff'd*, 607 F.2d 996 (2d Cir.1979). An advising bank, the part filled by Merchants, assumes no, or very limited responsibilities under the letter of credit arrangement. It is considered a neutral party, important in forging some connection between the issuing bank and the beneficiary, parties which generally have no prior link. The advising bank is confined to transmitting information and authenticating the information transmitted, and therefore assumes no liability to the party addressed, except liability for accurate transmission. *RSB Mfg. Corp. v. Bank of Baroda*, 15 B.R. 650, 654 (S.D.N.Y.1981) (Sand, J.); H. Harfield, *supra* at 10–11.[6]

■ Because the advising bank has no contractual obligation to the beneficiary under the letter of credit, the settlement between Merchants and Continental did not implicate either of their rights pursuant to the letter. Rather, the suit brought by Continental against Merchants was based upon what the New York State court termed "the documentary draft aspect" of the transaction. *Continental Time Corp. v. Merchants Bank, supra*, 459 N.Y.S.2d at 397. It concerned Merchants' liability to Continental based solely upon obligations imposed by UCC article 4 on Merchants in its capacity as a collecting bank.[7] The obligations existed independent of any imposed under the letter of credit agreement which was governed not by UCC article 4, but by the Uniform Commercial Practices ("UCP"). The settlement paid by Merchants redressed only the former obligations.[8] Nothing in the settlement agreement—explicitly or implicitly—gives to Merchants Continental's right to proceed against Credit Suisse for the latter's alleged wrongful dishonor of the letter of credit agreement. Merchants' attempted leap into Continental's shoes makes no sense against this background.

Merchants asserts, however, that at least one case has recognized its rights to proceed against Credit Suisse based apparently on some theory of implied or quasi-contract. In *Banco Nacional de Desarrolla v. Mellon Bank, N.A.* ("Banco Nacional"), 558 F.Supp. 1265 (W.D.Pa.1983), *rev'd*, 726 F.2d 87 (3d Cir.1984), an advising bank did bring suit against an issuing bank under a letter of credit to recover the face amount of the beneficiary's draft, which it had

---

**5.** Letters of credit are most easily defined by their purpose, which is to support an engagement to pay money. Ordinarily, they support a term of some other contract, but are construed independently without reference to the contract or arrangement they support. H. Harfield, *Letters of Credit*, 1–5 (1979).

**6.** A confirming bank, on the other hand, which Merchants does not claim to be, is obligated to the beneficiary. It must honor the drafts as though it were the letter's issuer to the extent of its confirmation. *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir.1970).

**7.** Article 4 of the UCC is entitled "Bank Deposits and Collections". Part 2 of the Article deals with obligations in general of collecting banks

and Part 5 deals with the collection of documentary drafts. Article 5 of the UCC is concerned with letters of credit. However, the Uniform Customs and Practice (UCP) controls, in lieu of Article 5, when by its terms the letter of credit is made subject to the UCP, as it is here.

**8.** Merchants analyzed the issue remaining in the suit between Continental and itself as involving the credibility of witnesses on the question of whether merchants had requested and received instructions from Continental. Since it perceived a bona fide factual issue with regard to its liability to Continental, Merchants settled the state court action for $150,000.

paid, but which the issuing bank had refused to honor. The district court ruled that Banco, the advising bank, had not wrongfully honored the draft under the terms of an amendment approved by the court as part of the letter of credit. Therefore, the advising bank was entitled to reimbursement from Mellon, the issuing bank, which was still responsible for payment. *Id.* at 1270. On appeal, the third circuit reversed on the ground that the draft at issue had not been presented as part of the letter of credit agreement, and therefore, both the seller (beneficiary) and the advising bank acted at their peril. Consequently, the court held that the issuing bank had no obligation to honor the draft and the advising bank was not entitled to reimbursement for payment on that draft.

Neither the district nor the circuit court opinion provides Merchants with support for its contractual claim. First, as Credit Suisse points out with regard to the district court's case, the payment made by Banco to the beneficiary, Encar, was made in the course of the letter of credit transaction; Banco's payment was for an obligation that the district court found was owed by Mellon to Encar. The settlement payment here cannot be characterized in this way. The payment was not in the course of the letter of credit transaction, nor was it for the same obligation owed by Credit Suisse to Continental.

Second, the circuit court opinion makes clear, reversing the district court's construction of the payment made by Banco, that when the advising bank's payment is outside the terms of the letter of credit transaction, and thus not a substitute for payment owed by the issuing bank to the beneficiary, no contractual obligations exist between the issuing bank and the advising bank concerning the payment. Merchants' payment to Continental was plainly outside of the letter of credit arrangement, in settlement of an action involving the rights and obligations between the two parties arising in the normal course of negotiating commercial drafts. The case, therefore, provides no support for the inference of any contractual relationship between Merchants and Credit Suisse. Merchants' contractual claim is dismissed.

### 2. *Contribution Claim*

Merchants seeks contribution pursuant to CPLR 1401.[9] The right to contribution is premised on liability to the same person for the same harm. There is no requirement that such liability be based upon a single legal theory. *Doyle v. Happy Tumbler Wash-O-Mat, Inc.,* 90 A.D.2d 366, 457 N.Y.S.2d 85, 87 (2d Dep't.1982); *Helmrich v. Eli Lilly & Co.,* 89 A.D.2d 441, 455 N.Y.S.2d 460 (4th Dep't.1982). Stated differently, contribution is available when two or more wrongdoers share responsibility for an injury in violation of duties they respectively owed to the injured party. *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 460 N.Y.S.2d 774, 776, 447 N.E.2d 717 (1983). Merchants premises its claim on the breach of duties owed independently by Merchants and Credit Suisse to Continental; it maintains that it owed a duty to request instructions from Continental and that Credit Suisse owed Continental certain contractual responsibilities as well as a duty to make accurate disclosures, to not withhold material facts and to act in good faith, all of which when breached, coalesced to cause the non-payment of Continental.

Whether or not Merchants has stated a valid cause of action under C.P. L.R. 1401 need not, however, be addressed. It is well established that a party which has entered into a settlement prior to judgment against it, as did Merchants here, cannot seek contribution from any other party. Gen.Oblig.Law § 15–108, subd. c, *Mitchell v. New York Hosp.,* 93 A.D.2d 832, 461

---

**9.** Section 1401 provides:
Except as provided in section 15–108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y.S.2d 49, 50 (2d Dep't.1983). In such circumstances, any payment or settlement prior to the entry of a money judgment is considered voluntary and the Legislature has adopted the rule that " 'no debt can be implied from a voluntary payment of the debt of another.' " *Makeun v. State,* 98 A.D.2d 583, 471 N.Y.S.2d 293, 298 (2d Dep't.1984) citing *Perlmutter v. Timely Toys, Inc.,* 8 A.D.2d 834, 190 N.Y.S.2d 107 (2d Dep't.1959). *See also Lettiere v. Martin Elevator Co., Inc.,* 62 A.D.2d 810, 406 N.Y.S.2d 510, 512–13 (2d Dep't.1978). Merchants is, therefore, barred from seeking contribution from Credit Suisse.

### 3. The Fraud Claim

Merchants' fraud and bad faith claims, its first cause of action, concern Credit Suisse's conduct in requesting that the letter of credit be placed on a collection basis.[10] Merchants alleges that Credit Suisse made the request[11] with the knowledge that Bloch, its customer, would refuse to pay due to his "abortive financial status", (Memorandum of Law at 30–31), but failed to disclose this information to Merchants.[12] Merchants maintains that it relied on Credit Suisse to make such a disclosure concerning the probable results of placing the letter of credit on a collection basis, that Credit Suisse had a duty to act in good faith with regard to Merchants,[13] and that due to this non-disclosure, Merchants was injured by its payment of the settlement with Continental.

■■■ There are traditionally five elements of fraud—misrepresentation of a material fact; falsity of the representation; scienter; reliance; and damages. *See, e.g., Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Sherkate Sahami Khass Rapol v. Henry R. Jahn & Son, Inc.,* 531 F.Supp. 1048, 1062 (S.D.N.Y.1982) (Cooper, J.), *aff'd in part and rev'd in part,* 701 F.2d 1049 (2d Cir.1983). In the above statement of its claim, Merchants appears to have satisfied these elements. The alleged non-disclosure by Credit Suisse of Bloch's financial status is material. Merchants maintains that it contributed to Merchants' alleged failure to request instructions from Continental and/or its decision to authorize the letter's placement on a collection basis.[14] Although Merchants' claim is not based on actual misrepresentation, Merchants contends that the non-disclosure arises in breach of a good-faith duty owed by Credit Suisse to Merchants. This is sufficient to state a claim of fraud. *See Coface v. Optique Du Monde,* 521 F.Supp. 500, 504 (S.D.N.Y.1980) (Conner, J.); *Fischer v. Kletz,* 266 F.Supp. 180, 188 (S.D.N.Y.1967) (Tyler, J.).

Credit Suisse's contention that the information concerning Bloch's financial status

10. Merchants apparently makes certain allegations of fraud too concerning Credit Suisse's dishonor of the documents presented under the letter of credit. These may not constitute part of Merchants' fraud claim against Credit Suisse for the reason that Merchants suffered no damages in this regard.

11. Merchants maintains that Credit Suisse *directed* that the letter of credit be placed on a collection basis, but it is clear from the telex in question, *see supra* n. 1, that this is not the case, and in any event, that Credit Suisse had no authority to do so, a fact of which Merchants should have been aware.

12. Merchants alleges that Credit Suisse was covering itself in that it discovered it had a customer who was financially unable to respond to its obligations under the letter of credit. (Memorandum of Law at 25).

13. Merchants cites Uniform Commercial Practices Article 8(c), UCC § 1–203 and UCC § 5–109, Official Comment, in support of its claim concerning Credit Suisse's duty to act in good faith.

14. Credit Suisse's arguments that it was under no obligation to pay Merchants under the letter of credit, and, alternatively, that Bloch's financial condition was irrelevant in terms of Credit Suisse's own obligation to honor the drafts presented, do not address the information's importance in the context of Credit Suisse's obligations to Merchants once it requested that the letter be placed on a collection basis. This is the only context in which the fraud claim operates.

was available to Merchants, and that it therefore had no obligation to disclose such information to Merchants seems patently without merit. Despite Merchants' sophisticated status in the financial community, Merchants cannot be expected to discover the solvency of another bank's customer in another country. Merchants' statement that it relied on Credit Suisse to make the disclosure must be taken as true for the purposes of evaluating the complaints' sufficiency, *California Motor Transportation Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *see* 5 C.A. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 at 597 (1969). Damages are readily apparent in the settlement amount it payed to Continental.

Oft-stated is the admonishment that a complaint should not be dismissed for insufficiency unless it appears certain that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980) citing *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Merchants' fraud claim may stand.

### 4. *The Indemnity Claim*

Merchants' claim for indemnity is less clearly sufficient, but construed in the light most favorable to plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and based on Merchants' allegations of fraud, its dismissal is unwarranted. There are two categories of indemnification, one implied, the other contractual. Merchants proceeds on a theory of implied indemnification, the central thrust of which is to prevent unjust enrichment by allowing recovery as between tortfeasors: "the right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." *Mauro v. McCrindle,* 70 A.D.2d 77, 419 N.Y.S.2d 710, 713 (2d Dep't. 1979), *aff'd,* 52 N.Y.2d 719, 436 N.Y.S.2d

273, 417 N.E.2d 567 (1980), quoting *Dunn v. Uvalde Asphalt Paving Co.,* 175 N.Y. 214, 67 N.E. 439 (1903). There is no requirement that a duty or relationship exist between the indemnitor and the indemnitee. *Id.* 419 N.Y.S.2d at 713–14.

In this sense, Merchants has stated a valid claim for indemnity in alleging that Credit Suisse's non-disclosure of certain information concerning the latter's customer, Bloch, caused the harm to Continental, for which Merchants has paid. The fact that Merchants' theory may be novel does not make dismissal proper, *Sherman v. St. Barnabas Hosp.,* 535 F.Supp. 564, 571–72 (S.D.N.Y.1982) (Goettel, J.), and the indemnity claim survives along with Merchants' cause of action based on fraud.

Credit Suisse's motion to dismiss is granted with regard to Merchants' claims based on contract and contribution.

IT IS SO ORDERED.