**SOUND OF MARKET STREET, INC.**

v.

**CONTINENTAL BANK INTERNATIONAL,**
**Appellant.**

**No. 86–1358.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 11, 1987.

Decided May 15, 1987.

Rehearing and Rehearing In Banc
Denied June 15, 1987.

Richard M. Meltzer, Mark R. Rosen (argued), Mark C. Rifkin, Mesirov, Gelman,

Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellee.

Peter F. Marvin (argued), Miller, Marvin, Dunham, Doering, Schreiber & Sloan, Philadelphia, Pa., for appellant.

John J. Gill, III, General Counsel, Mathew H. Street, Asst. Counsel, American Bankers Assn., Washington, D.C., for amicus curiae American Bankers Assn.

William R. Klaus, William R. Colmery, Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for amicus curiae Fidelity Bank, Nat. Ass'n First Pennsylvania Bank, N.A., Mellon Bank (East), Nat. Ass'n, The Philadelphia Nat. Bank, Pittsburgh Nat. Bank, Provident Nat. Bank.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges and RODRIGUEZ, District Judge.[*]

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In this case, the beneficiary of a letter of credit, Sound of Market Street, Inc. ("Sound of Market"), sued an advising bank, Continental Bank International ("Continental"), alleging that Continental's delay in advising the letter of credit to Sound of Market resulted in Sound of Market's failure to meet the shipping date required by the letter of credit and that the delay breached Continental's duty to Sound of Market under the Uniform Commercial Code ("UCC") and the common law. The district court held that an advising bank owed the beneficiary a tort duty of timely transmission, 623 F.Supp. 93. Finding no contractual, statutory, or tort duty of Continental to advise Sound of Market within a reasonable period of time, we reverse.

### I.

In July 1982, Dalco of Cyprus ("Dalco") agreed to pay Sound of Market $125,550 in exchange for the return of 165,000 defective audio cassette tapes Dalco had sold Sound of Market in May 1982. Dalco agreed to have a letter of credit for $125,550 issued in favor of Sound of Market. Sound of Market told Dalco that its bank was Continental Bank in Philadelphia ("Continental Philadelphia").[1] Sound of Market asserts that no other terms of the transaction were discussed with Dalco.

Dalco contracted with the Bank of Cyprus for the issuance of the letter of credit. The Bank of Cyprus had a correspondent relationship with Continental. On August 6, 1982, Continental's New York office received a telex from the Bank of Cyprus requesting Continental to notify Sound of Market through Continental Philadelphia that a letter of credit had been opened with Sound of Market named as beneficiary. The telex identified three terms of the letter of credit that are relevant to our discussion. First, shipment had to be made on or before August 31, 1982. Second, the tapes had to be shipped on a vessel "not scheduled to call on her current voyage at Famagusta Kyrenia and Karavostassi Cyprus." App. at 28. Third, both the letter of credit and the request for advice were made subject to the Uniform Customs and Practice for Documentary Credits (International Chamber of Commerce Publication No. 290, 1974 revision) ("UCP").

While preparing the letter of credit for advice to Sound of Market, Continental identified the limitation on the vessel's ports of call as a potential boycott clause. Because letters of credit containing boycott clauses are regulated, see 50 U.S.C.A. App. § 2407 (West Supp.1986), Continental requested an opinion on the alleged boycott provision from its parent company's legal staff on August 12. On August 18, an attorney stationed in New York counseled that the letter of credit could be advised without further concern about the suspected boycott clause. That same day, Continental mailed the letter of credit to Continental Philadelphia and a copy to Sound of Market. Continental Philadelphia received the letter of credit on August 25, but

---

[*] Honorable Joseph H. Rodriguez, United States District Judge for the District of New Jersey, sitting by designation.

[1]. Continental and the Continental Bank in Philadelphia are unrelated entities.

Sound of Market claims never to have received its copy. Sound of Market received the letter of credit from Continental Philadelphia on August 27.

Sound of Market failed to meet the shipping date and Dalco refused to amend the letter of credit to permit later shipment. Sound of Market then sued Continental for damages, stating in its complaint that "[i]n violation of its requirements under the Uniform Commercial Code, Article 5, and in violation of its duties owed to plaintiff, the beneficiary of the letter of credit, [Continental] negligently and unreasonably failed to advise the plaintiff of the terms and conditions of the letter of credit in sufficient time for plaintiff to fulfill the requirements and conditions stated in the letter of credit to obtain the refund." App. at 7.

Continental moved for summary judgment on the ground that "it did not have a legal obligation to advise [Sound of Market] of the letter of credit in a timely fashion." *Sound of Market Street, Inc. v. Continental Bank International*, 623 F.Supp. 93, 94 (E.D.Pa.1985). The district court denied Continental's motion, stating that "[i]f advising banks are liable for inaccurate statements regarding letters of credit, they should be liable for untimely statements as well." *Id.* at 95. At trial, applying Pennsylvania law, the court charged the jury that Continental owed Sound of Market a duty to act as a reasonably prudent person would have under the circumstances. Affirmatively answering interrogatories submitted to it, the jury found that Continental was negligent in processing the letter of credit during the period from August 6 to August 18, and negligent in deciding to send the letter of credit via first class mail.

On appeal, Continental asserts that the district court erred in imposing a duty of timely transmission on an advising bank. Continental further argues that the UCP should govern the scope of such duty, if any. Finally, Continental argues that New York law should govern the resolution of this dispute.

## II.

Continental asserts that New York law should determine the legal consequences of a New York advising bank's conduct in New York, particularly given New York's interest in international letter of credit transactions. *See J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 371 N.Y. S.2d 892, 897–900, 333 N.E.2d 168, 172–73 (1975), *cert. denied*, 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975). Sound of Market, on the other hand, urges that Pennsylvania law applies to this dispute because injury occurred to a Pennsylvania corporation.

We need not resolve this issue if the laws of New York and Pennsylvania would not conflict on the resolution of this dispute. *Coons v. Lawlor*, 804 F.2d 28, 30 (3d Cir. 1986). Because we find that neither New York nor Pennsylvania would impose a duty of timely transmission upon an advising bank, we find it unnecessary to make a choice of law.

## III.

Continental argues that the district court should have considered the UCP in determining the extent of an advising bank's duties to a beneficiary. Under New York law, "Article 5 does not apply to a letter of credit or a credit if by its terms or by agreement, course of dealing or usage of trade such letter of credit or credit is subject in whole or in part to the [UCP]." N.Y.U.C.C. Law § 5–102(4) (McKinney 1964); *accord, e.g., United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 360 N.E.2d 943, 947 & n. 2 (1976); *Banco Nacional de Desarrollo v. Mellon Bank, N.A.*, 726 F.2d 87, 90 n. 5 (3d Cir.1984); *KMW International v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 15 & n. 3 (2d Cir.1979). Under the circumstances enumerated in the statute, the UCP replaces Article 5 as the governing substantive law, thus controlling legal relations between all parties to a letter of credit transaction, including the beneficiary and an advising bank. H. Harfield, Practice Commentary, N.Y.U.C.C. Law § 5–102; *Almatrood v. Sallee International*, No. 83–

1800, slip op. (S.D.N.Y. May 13, 1985) [Available on WESTLAW, DCT database]. Because the letter of credit in this case was subject to the UCP, the UCP replaced Article 5 under New York law.

■ Nonetheless, the New York Court of Appeals has stated that, even where the UCP is applicable, "it would not, in the absence of a conflict, abrogate the precode case law ... and that authority continues to govern even where article 5 is not controlling." *United Bank Ltd.*, 360 N.E.2d at 948 n. 2. Thus, the UCP "does not bar the relief provided for in section 5–114 of the code," which codifies precode caselaw. *Id.* Similarly, although the UCP does not impose a duty of accurate transmission on advising banks, New York law imposes such a duty even where the UCP is applicable. *E.g., First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 486 N.Y.S.2d 715, 718–20 & n. 4, 475 N.E.2d 1255, 1259–60 & n. 4 (1985); *Bril v. Suomen Pankki Finlands Bank*, 199 Misc. 11, 97 N.Y.S.2d 22, 33–34 (Sup.Ct.1950); *Merchants Bank of New York v. Credit Suisse Bank*, 585 F.Supp. 304, 308 & n. 7 (S.D.N.Y.1984).

■ We recognize, however, that "Pennsylvania regards the UCP as a recording of common practice, and not the substantive law of a state which contracting parties may choose." *Banco Nacional*, 726 F.2d at 90 n. 5. Thus, assuming that Pennsylvania's choice of law rules dictate application of Pennsylvania law, a Pennsylvania court would apply Pennsylvania's version of the UCC as the governing law even if a letter of credit has been made "subject" to the UCP.[2] *Intraworld Industries v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316, 322–23 (1975). Accordingly, we must hereafter consider whether either the UCC or the UCP imposes a duty of timely transmission running from an advising bank to the beneficiary of a letter of credit.

IV.

■ Letters of credit serve international commerce by providing assurance of prompt payment at minimal cost. In the ordinary letter of credit transaction, there are at least three distinct agreements: "the underlying contract between the customer and the beneficiary which gave rise to their resort to the letter of credit mechanism to arrange payment; the contract between the bank and its customer regarding the issuance of the letter and reimbursement of the bank upon its honoring a demand for payment; and the letter of credit itself, obligating the bank to pay the beneficiary." *Insurance Co. of North America v. Heritage Bank, N.A.*, 595 F.2d 171, 173 (3d Cir.1979); *accord Voest-Alpine International Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 682 (2d Cir.1983); *First Commercial Bank*, 486 N.Y.S.2d 718, 475 N.E.2d at 1258. The issuing bank's obligation created by the letter of credit is totally independent of the other contracts. *Voest-Alpine*, 707 F.2d at 682; *Insurance Co.*, 595 F.2d at 173; *First Commercial Bank*, 486 N.Y.S.2d 719, 475 N.E.2d at 1259; *Intraworld Industries*, 336 A.2d at 323.

■ Where the issuing bank and the beneficiary have no prior relationship, another bank may be asked to advise the letter of credit. "A bank which gives notification of the issuance of a credit by another bank" is an "advising bank." 13 Pa.Cons.Stat.Ann. § 5103 (Purdon 1984); N.Y. U.C.C. Law § 5–103(e) (McKinney 1964); UCP, Art. 3(b). The advising bank is the agent of the issuing bank for which it performs the service of advising the letter of credit. *Bamberger Polymers International Corp. v. Citibank, N.A.*, 124 Misc.2d 653, 477 N.Y.S.2d 931, 933 (Sup.Ct. 1983). Thus, when a letter of credit is advised to the beneficiary by an advising bank, there is a fourth agreement involved in the letter of credit transaction—an

---

**2.** Although we see no reason that the UCP may not be incorporated by reference as a term of the letter of credit or a contract related to the letter of credit transaction, *see* Pennsylvania Bar Ass'n Notes, 13 Pa. Cons.Stat.Ann. § 5102 (Purdon 1984), or be considered as evidence of general banking usage, we need not decide the role of the UCP under Pennsylvania law in the context of this case.

agreement between the issuing bank and the advising bank.

## V.

 The district court recognized that Continental did not owe Sound of Market any contractual duty because there was no privity of contract between Sound of Market and Continental. App. at 676. Sound of Market cannot point to any agreement between Sound of Market and Continental. Assuming a duty of timely transmission could be derived from the letter of credit, both statute and caselaw indicate that Continental did not become party to the letter of credit arrangement between Sound of Market and the Bank of Cyprus by advising the letter of credit. *See Banco Nacional,* 726 F.2d at 89 n. 2 ("The advising bank assumes no promissory liability to the beneficiary for payment of drafts under the letter of credit.") (citing 13 Pa.Cons. Stat.Ann. § 5107(a)); N.Y.U.C.C. Law § 5–107(a) (same); UCP, Art. 3(b) (a letter of credit "may be advised to a beneficiary through another bank (the advising bank) without engagement on the part of that bank"); *see also Merchants Bank of New York,* 585 F.Supp. at 308 ("advising bank has no contractual obligation to the beneficiary under the letter of credit"); *National American Corp. v. Federal Republic of Nigeria,* 425 F.Supp. 1365, 1372 (S.D.N.Y. 1977) (same). Further, Continental, as is common practice, stated in its advice that "[t]his credit is not confirmed by us and therefore carries no engagement on our part." App. at 10. Finally, because the letter of credit was established only upon Sound of Market's receipt of an authorized written advice of its issuance, 13 Pa.Cons. Stat.Ann. § 5106(a)(2); N.Y.U.C.C. Law § 5–106(1)(b), a duty to timely "establish" the letter of credit could not have arisen from the letter of credit itself.

 The agreement between Continental and the Bank of Cyprus for the advice of the letter of credit also fails to impose on Continental a contractual duty of timely transmission in favor of Sound of Market. The telex contains no provision governing timeliness of transmission, and Sound of Market introduced no evidence of additional terms in that contract or of general banking custom. In fact, Sound of Market failed to produce competent evidence that Continental was obliged by contract to the Bank of Cyprus to advise the letter of credit at all. Assuming, however, that Continental was under some contractual duty to advise the letter of credit, Sound of Market was neither party to that contract nor a third party beneficiary of that contract.

In Pennsylvania:

"To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was *intentionally assumed* by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear in the contract itself."

*B. Bornstein & Son, Inc. v. R.H. Macy & Co.,* 278 Pa.Super. 156, 420 A.2d 477, 482 (1980) (quoting *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 56–57, 70 A.2d 828, 830 (1950)) (some emphasis added).

In New York, "a third party may recover 'only by establishing (1) the existence of a valid and binding contract between the other parties, (2) that the contract was *intended* for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the *assumption* by the contracting parties *of a duty to compensate* him if the benefit is lost.'" *Worldwide Sugar Co. v. Royal Bank of Canada,* 609 F.Supp. 19, 23 (S.D.N.Y.1984) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 723, 451 N.E.2d 459, 469 (1983)) (emphasis added); *accord Fourth Ocean Putnam Corp. v. Interstate Wreck-*

*ing Co.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 4–6, 485 N.E.2d 208, 211–13 (1985).

Sound of Market has not shown that Continental, through its agreement with the Bank of Cyprus, intended to assume liability to Sound of Market for untimely transmission. The purpose of that contract was to assist the Bank of Cyprus in fulfilling its contract with Dalco and thus, if any third party was intended to benefit, that party was Dalco. Dalco, after all, was under a duty to cause a letter of credit to issue pursuant to its contract with Sound of Market. Further, the request for Continental to advise was made subject to the UCP and, regardless of its substantive effect under the governing law, the inclusion of the UCP in that contract indicates a firm intention to deny liability to the beneficiary. *See* UCP General Prov. f ("[a] beneficiary can in no case avail himself of the contractual relationships existing between banks").

### VI.

 An advising bank does not owe the beneficiary a statutory duty of timely transmission. The relevant provision of both the Pennsylvania and New York versions of the UCC states:

> *Obligation of bank advising a credit.* —Unless otherwise specified an advising bank by advising a credit issued by another bank does not assume any obligation to honor drafts drawn or demands for payment made under the credit but it does assume obligation for the accuracy of its own statement.

13 Pa.Cons.Stat.Ann. § 5107(a); N.Y. U.C.C. Law § 5–107(1). Thus, the only express obligation of an advising bank is to be accurate in its statement of the letter of credit. Nowhere does the UCC suggest a duty to timely transmit an advice. *Compare* 13 Pa.Cons.Stat.Ann. § 5112(a) (a bank to which a demand for payment is presented may defer honor until close of third banking day following receipt of documents).

Similarly, the UCP does not impose a duty of timely transmission running from an advising bank to the beneficiary. The

UCP states only that "[a]n irrevocable credit may be advised to a beneficiary through another bank (the advising bank) without engagement on the part of that bank." UCP, Art. 3(b).

UCC § 5–102(3) recognizes that Article 5 "deals with some but not all of the rules and concepts of letters of credit." 13 Pa. Cons.Stat.Ann. § 5102(c), and authorizes courts to "apply a particular rule by analogy to cases not within its terms, or to refrain from doing so." *Id.* § 5102(c), comment 2. Such application is to "promote the underlying purposes and policies" of the Code. *Id.* Accordingly, we acknowledge that the courts of Pennsylvania and New York are free to extend Code duties by analogy to parties upon whom they are not expressly imposed. We find nothing in the UCC, or in the UCP for that matter, which imposes on anyone a duty similar to that which the district court imposed on Continental. Section 5109(a), for example, recognizes that "[t]he obligation of an *issuer to its customer* includes good faith and observance of any general banking usage." *Id.* § 5109(a) (emphasis added). However, even assuming a court might find the advising bank-beneficiary relationship analogous to that between the issuing bank and its customer, the district court record provides no basis for finding that Continental failed to act in good faith or failed to observe general banking usage.

### VII.

The district court, apparently applying Pennsylvania law, held that "[i]f advising banks are liable for inaccurate statements regarding letters of credit, they should be liable for untimely statements as well" because "[a] beneficiary can suffer the same types of harm regardless of whether he gets inaccurate information about the letter of credit, untimely information or no information at all." *Sound of Market Street*, 623 F.Supp. at 95. Accordingly, the district court instructed the jury that CBI was liable if it had been negligent in failing to earlier advise of the letter of credit.

"[N]o negligence claim can be based upon a state of facts on which the law does

not impose a duty upon the defendant in favor of the plaintiff." *Boyce v. United States Steel Corp.*, 446 Pa. 226, 285 A.2d 459, 461 (1971); *accord, e.g., Turcotte v. Fell*, 68 N.Y.2d 432, 510 N.Y.S.2d 49, 52, 502 N.E.2d 964, 967 (1986); *Morena v. South Hills Health System*, 462 A.2d 680, 684 & n. 5 (Pa.1983); *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). "The statement that there is or is not a duty, however, 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Turcotte*, 510 N.Y.S.2d at 52, 502 N.E.2d at 967 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* § 53, at 357 (5th ed. 1984)). "Thus, we may perceive duty simply as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person." *Bradshaw*, 612 F.2d at 138. In determining whether to impose tort liability, "policy play[s] an important role." *De Angelis v. Lutheran Medical Center*, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 627, 449 N.E.2d 406, 407 (1983); *accord Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 681 (1979); *Bradshaw v. Rawlings*, 612 F.2d at 138. While we have found no caselaw directly on point, for the reasons that follow we conclude that neither Pennsylvania nor New York would impose a tort duty of timely transmission running from an advising bank to a beneficiary.

■ First, looking to general principles of negligence law, we find no support for the imposition of such a duty. In advising the letter of credit, Continental was acting as the agent of the issuing bank, the Bank of Cyprus. The issue is whether an agent, engaged by one party to give notice of a letter of credit to another, is liable to the other for economic injury occasioned by its failure to notify the other of the letter of credit within a reasonable period of time. Although most courts have recognized a duty to avoid foreseeable physical injury to the person or property of others even where there is no preexisting relationship between the parties, they have generally been reluctant to impose a duty to avoid injury to the economic interests of others where there is no preexisting relationship. Thus, as between strangers, courts have generally held that the foreseeability of possible injury to the economic interest of another is not alone sufficient to warrant the imposition of a duty of care in his favor. Similarly, the fact that one has by contract voluntarily assumed a duty of performance to one party does not ordinarily give rise to a duty to perform so as to avoid foreseeable economic injury to another party, although such a duty has been recognized by some courts where there is a misrepresentation or other affirmative conduct in the course of performance which is reasonably relied upon by the third party to his detriment.

As stated in the Restatement (Second) of Agency § 352 (1957):

> An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things.

Thus, when "A is given money by P and directed to pay it to T," but A fails to do so, "A is not thereby liable to T." *Id.* Illustration 1. That point is reemphasized in *id.* § 357:

> An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed.

A similar view is reflected in the Restatement of Torts and the leading treatises on the law of torts. In *Prosser & Keeton on Torts*, for example, the case law is summarized as follows:

> [B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the

responsibility of the actor when he enters upon a course of *affirmative conduct* which may be expected to affect the interests of another person.

\* \* \* \* \* \*

[Nevertheless, courts do not impose liability where there is neither affirmative conduct nor physical injury.] The refusal to find any liability to third persons has been most definite where (1) the only wrong of the defendant consisted in the failure to perform a promise made as to be distinguished from defective performance, and (2) the loss suffered was economic in character....

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* § 93, at 667–69 (5th ed. 1984) (emphasis added; footnotes omitted).[3]

Similarly, Restatement (Second) of Torts § 324A (1965) teaches:

One who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking....

(Emphasis added).

Under the general principles reflected in these authorities, no duty on the part of Continental to Sound of Market would be imposed. Sound of Market's alleged injury was occasioned not by an affirmative act of Continental, but rather by its failure to advise Sound of Market of the letter of credit in time for it to comply with the terms of the letter. Moreover, the loss occasioned by Sound of Market's resulting inability to provide documents required to obtain payment under the letter of credit was economic in character.

The Pennsylvania courts follow the general principles of tort law noted above and we have found no Pennsylvania case that has imposed liability in the absence of both affirmative conduct and physical injury.[4] *E.g., Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 470 A.2d 86, 90 (1983); *Cohen v. Tradesmen's National Bank,* 262 Pa. 76, 105 A. 43, 44 (1918); *Roban Construction v. Housing Authority of City of Hazelton,*

---

**3.** Indeed, *Prosser & Keeton on Torts* states the general rule to be that there is no liability for intangible economic loss in the absence of "some kind of special relationship" even where the plaintiff's loss has resulted from affirmative action on the part of the defendant. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* § 93, at 669 (5th ed. 1984).

**4.** The Pennsylvania Supreme Court has on occasion employed more expansive language, noting in *Doyle v. South Pittsburgh Water Co.,* 414 Pa. 199, 199 A.2d 875 (1964), that "where a party to a contract assumes a duty to the other party to the contract, and it is foreseeable that a breach of that duty will cause injury to some third person not a party to the contract, the contracting party owes a duty to all those falling within the foreseeable orbit of the risk of harm." *Id.* at 878; *accord St. Clair v. B & L Paving Co.,* 270 Pa.Super. 277, 411 A.2d 525, 526 (1979); *Printed Terry Finishing Co. v. City of Lebanon,* 247 Pa. Super. 277, 372 A.2d 460, 466 (1977).

This broad statement, however, must be read in light of circumstances before the court. In *Doyle,* the defendant water company, which was contractually obligated to the municipality to provide water, failed to inspect its hydrants during winter. The plaintiffs' house caught fire, the frozen hydrants failed to function, and the house burnt down. In imposing tort liability upon the agent company, the court noted that "plaintiffs are not relying on the defendant's breach of duty to supply water but on its breach of a duty to use reasonable care in the operation and maintenance of a water system which the defendant had in fact set up in the vicinity of the plaintiffs' property." 199 A.2d at 878. The court further emphasized the plaintiffs' justifiable reliance on the presence of fire hydrants. *Id.* at 878–79. Thus, not only did the court hint at affirmative conduct requiring further protection of its undertaking, *see* Restatement (Second) of Torts § 324A (1965), but the court emphasized the plaintiffs' justifiable reliance upon defendant's undertaking and the physical harm suffered. *See* Restatement (Second) of Agency § 352 (1957).

In *Printed Terry* and *St. Clair,* there was both affirmative conduct and physical injury. In *Printed Terry,* a firm hired by the city to test its water system advised the city to close certain water mains resulting in a water supply inadequate to extinguish a blaze at the plaintiffs' factory. In *St. Clair,* a company hired by the state resurfaced a road in a manner which left a drop-off from the road surface to the shoulder and resulted in injury to the plaintiff. Although the defendant performed the task in accordance with the state's specifications, the court imposed a tort duty "because the defendant created a condition which it knew to be dangerous." 411 A.2d at 527.

67 Pa.D. & C.2d 130, 142–43 (C.P.1974); *Snyder v. Bell Telephone Co.*, 32 Pa.D. & C.2d 128, 131–35 (C.P.1963); *Newman v. Forward Lands, Inc.*, 418 F.Supp. 134, 136 (E.D.Pa.1976).

The New York courts are somewhat more restrained in imposing liability than the above-cited authorities. They will impose liability when an agent engages in affirmative conduct which occasions physical harm and when an agent has taken control of land or other tangible things. *E.g., Caldarola v. Moore-McCormack Lines, Inc.*, 295 N.Y. 463, 68 N.E.2d 444, 444–45 (1946); *aff'd*, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968 (1947); *Christianson v. Breen*, 288 N.Y. 435, 43 N.E.2d 478, 479 (1942); *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896, 898–99 (1928); *Greco v. Levy*, 257 A.D. 209, 12 N.Y.S.2d 470, 472 , *aff'd*, 282 N.Y. 575, 24 N.E.2d 989 (1939); *Jones v. Archibald*, 45 A.D.2d 532, 360 N.Y.S.2d 119, 122 (1974); *Rogers v. Dorchester Associates*, 39 A.D.2d 878, 333 N.Y.S.2d 677, 680 (1972); *Mathis v. Yondata Corp.*, 125 Misc.2d 383, 480 N.Y.S.2d 173, 176 (Sup.Ct. 1984). Unlike § 357 of the Restatement (Second) of Agency, however, New York courts do not impose a duty on an agent in favor of a third party in the absence of affirmative action even when the agent's failure to perform has resulted in physical harm to the person or possessions of a third party which relied upon the agent's performance. *Jones v. Archibald*, 45 A.D.2d 532, 360 N.Y.S.2d at 122; *Anderson v. Radio Corp. of America*, 29 Misc.2d 611, 216 N.Y.S.2d 182, 183 (Sup.Ct. 1961). While the New York courts have experienced some difficulty in drawing the line between misfeasance and nonfeasance in specific situations, *see H.R. Moch Co.*, 159 N.E. at 898–99; *Schuster v. City of New York*, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 271, 154 N.E.2d 534, 538 (1958), we believe they would find that Continental's failure to earlier advise Sound of Market of the credit fell on the non-liability side of the line. In the words of Justice (then Judge) Cardozo, we think the New York courts would characterize that failure "at most [as] the denial of a benefit" and "not [as] the commission of a wrong." [5] *H.R. Moch Co.*, 159 N.E. at 899.

More importantly, we believe that in deciding whether to impose a heretofore unrecognized duty on the part of an advising bank to a potential beneficiary, the courts of New York and Pennsylvania would look not only to general tort principles but also to the policies the legislatures of their respective states have adopted with respect to letters of credit. The policy of Pennsylvania and New York toward letters of credit is found in the UCC and the UCP. Under those codes, a letter of credit and the underlying contract are independent of one another and serve different purposes. *First Commercial Bank*, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259; *Intraworld Industries*, 336 A.2d at 323. In a situation of this kind, the underlying contract spells out the rights and liabilities of the buyer and seller. The purpose of the letter of credit is much more limited. It is intended to assure the seller of prompt payment by a financially responsible party once possession of the goods is surrendered; it is not intended to assure performance of the underlying contract or to provide damages for breach of that contract. Under the UCC approach to letters of credit, prior to being advised of the letter of credit, the seller's rights are based solely on the underlying

---

5. Sound of Market, citing *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), argues that "the assumption of a contractual duty is the assumption of a duty to act carefully for the benefit of all whose conduct [is] to be governed." Appellee Br. at 40. In *Glanzer*, however, the defendant, pursuant to a contract with the seller of certain beans, negligently weighed the beans and reported an erroneous weight to the plaintiff purchaser. In imposing liability for negligent misrepresentation, the court recognized that the defendant undertook the affirmative act of misrepresenting the weight to the purchaser knowing that the purchaser would rely upon the defendant's representation of the weight. Similarly, liability would be imposed here had Continental inaccurately transmitted the terms of the letter of credit and Sound of Market relied thereon to its detriment. The UCC codifies the rule that an advising bank is liable if it misrepresents the terms of a letter of credit and thereby causes loss to the beneficiary. *See* 13 Pa. Cons.Stat.Ann. § 5107(a).

contract. The letter of credit is only established "as regards the beneficiary when he receives [the] letter of credit or an authorized written advice of its issuance." 13 Pa.Cons.Stat.Ann. § 5106(a)(2); N.Y.U.C.C. Law §. 5–106(1)(b). If the buyer for any reason fails to timely establish a letter of credit as required by the underlying contract, the seller may retain the goods and sue on the original contract for breach of that contract. Once the letter of credit is established, however, the seller acquires the additional right to rely upon the letter of credit. He acquires the right to insist upon payment from the issuing bank upon presentation of the required documents and the right to collect damages from the advising bank if the purpose of the letter of credit is frustrated by the giving of an inaccurate advice.

We believe that judicial imposition of a duty running from the advising bank to the seller before the letter of credit is established is fundamentally inconsistent with the approach of the UCC and would be likely to cause uncertainty in an area where certainty is of the utmost importance. We also believe that the courts of New York and Pennsylvania would find that the imposition of such a duty and the creation of such uncertainty is not necessary to provide reasonable protection to the seller. If not timely advised of the letter of credit, the seller will still have his goods and may sue the buyer for his expectation damages.

While, as we have noted, no New York or Pennsylvania court has ruled upon the issue before us, there are a number of cases applying New York law that have commented on the very limited scope of an advising bank's duties. In *First Commercial Bank v. Gotham Originals*, 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255 (1985), the New York Court of Appeals observed that an advising bank "stood in a neutral position; its only obligation was to convey accurate information of the issuance, amendment and terms and conditions of the credit to the beneficiaries." *Id.* 64 N.Y.S.2d at 720, 486 N.E.2d at 1260. As further explained in *Merchants Bank of*

*New York v. Credit Suisse Bank*, 585 F.Supp. 304 (S.D.N.Y.1984):

An advising bank ... assumes no, or very limited responsibilities under the letter of credit arrangement. It is considered a neutral party, important in forging some connection between the issuing bank and the beneficiary, parties which generally have no prior link. The advising bank is confined to transmitting information and authenticating the information transmitted, and therefore assumes no liability to the party addressed, except liability for accurate transmission.

*Id.* at 308; *accord General Cable Ceat, S.A. v. Futura Trading*, No. 82–1087, slip op. (S.D.N.Y. Jan. 18, 1983) [Available on WESTLAW, DCT database]; *RSB Mfg. Corp. v. Bank of Baroda*, 15 B.R. 650, 654 (S.D.N.Y.1981); *National American*, 425 F.Supp. at 1372.

In *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana de Navegacion*, 765 F.2d 1306 (5th Cir.1985), the Court of Appeals for the Fifth Circuit refused to impose a duty of due care that is not found in the UCC upon a confirming bank. Its rationale is equally pertinent in the present context.

The reasons given by the [district] court for its refusal to expand the confirming bank's liability on a negligence theory are sound: "[It] would disrupt the letter of credit transaction as structured by [Article 5] and would hinder the commercial viability of the letter of credit. A bank in Hibernia's position would not be nearly so willing to provide its services if liability were extended to parties with whom it never dealt." 586 F.Supp. at 264. The exchange function of the letter of credit rests upon objective predictable standards with defined expectations and risks. Injecting the uncertainty of the tort principles contended for is inconsistent with these necessities and is not supported by the Code, which implicitly rejects them.

*Id.* at 1308. We believe that the Supreme Court of Pennsylvania and the New York Court of Appeals would find these words persuasive.

In sum, we predict that neither Pennsylvania nor New York would impose a tort duty of timely transmission running from an advising bank to the beneficiary of the letter of credit. Until the letter of credit is advised, the only party owing a duty to the future beneficiary is the account party and that duty derives from the underlying contract between the account party as buyer and the future beneficiary as seller. Once the letter of credit is advised, and thereby established, the beneficiary has a right to rely upon accuracy of the advice given and the advising bank is liable if a loss is occasioned by its failure to accurately advise. Because Continental concededly did not breach its duty of accurate transmission, the judgment against it cannot stand.

## VIII.

The judgment of the district court will be reversed and the case will be remanded to the district court so that it may enter a judgment in Continental's favor.